RAFAEL M. GONZALEZ JR.
United States Attorney, District of Idaho
CHRISTINE ENGLAND, Idaho State Bar No. 11390
Assistant United States Attorney, District of Idaho
1290 West Myrtle Street, Suite 500
Boise, ID 83702
Tel: (208) 334-1211; Fax: (208) 334-9375
Christine.England@usdoj.gov

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
STEPHEN G. BARTELL, Colorado Bar No. 21760
Assistant Section Chief, Natural Resources Section
stephen.bartell@usdoj.gov
DAVID L. NEGRI, Idaho State Bar No. 6997
Trial Attorney, Natural Resources Section
c/o U.S. Attorney's Office
1290 West Myrtle Street, Suite 500
Boise, ID 83702
Tel: (208) 334-1936; Fax: (208) 334-1414
david.negri@usdoj.gov
THOMAS K. SNODGRASS, Colorado Bar No. 31329
Senior Attorney, Natural Resources Section
999 18th Street, South Terrace, Suite 370
Denver, CO 80202
Telephone: 303-844-7233; Fax: 303-844-1350
thomas.snodgrass@usdoj.gov
*Counsel for Plaintiff United States of America*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. _____ |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT FOR DECLARATORY** |
| v. ) | **AND INJUNCTIVE RELIEF** |
| ) | |
| STATE OF IDAHO; IDAHO ) | |
| DEPARTMENT OF WATER RESOURCES, ) | |
| an agency of the State of Idaho; and GARY ) | |
| SPACKMAN, in his official capacity as ) | |
| Director of the Idaho Department of Water ) | |
| Resources, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

1

Plaintiff United States of America alleges as follows:

## I.    INTRODUCTION

1.    The United States owns millions of acres of land within the State of Idaho on behalf of the American people, and it makes most of those acres available for stockwater grazing by federal permittees. *See generally* U.S. Const. art. IV, § 3, cl. 2 (providing that "Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States"); Taylor Grazing Act of 1934, 43 U.S.C. §§ 315-315c (authorizing the federal grazing program); Organic Administration Act of 1897, 16 U.S.C. §§ 551 *et seq.* (authorizing the regulation of use and occupancy of the national forests); Granger-Thye Act of 1950, 16 U.S.C. § 580*l* (authorizing the issuance of livestock grazing permits). To enable this federal grazing program, the United States holds thousands of water rights in Idaho that have been decreed or licensed for use by livestock on federal grazing allotments ("stockwater rights"). The water that is the subject of these stockwater rights is generally available for use by any livestock owner who holds a permit to graze livestock on the federal lands on which the water right is located.

2.    A series of Idaho statutes, enacted in the last five years and codified primarily at Idaho Code ("I.C.") §§ 42-113, 42-224 and 42-501 through -507, threatens to forfeit these federally owned stockwater rights, and, as a result, to undermine the congressionally authorized federal grazing program. These Idaho statutes prohibit any "agency of the federal government" from acquiring stockwater rights unless the agency itself owns livestock; make certain stockwater rights associated with federal lands appurtenant to the private property of federal permittees, rather than to the place of use; and establish a framework for widespread forfeiture of existing

federally owned stockwater rights. *See* I.C. §§ 42-113(2)(b), 42-224, 42-502.

3.       On May 13, 2022, as a direct result of the enactment of these statutes, the State of Idaho and the Idaho Department of Water Resources ("IDWR"), acting through the Director of IDWR (collectively, "the Defendants"), issued three show-cause orders requiring the United States to show cause within twenty-one days why fifty-seven federally owned stockwater rights should not be forfeited. *See* Ex. 1 (Am. Order to Show Cause, Docket No. P-OSC-2021-001 (Crane Creek Allotment); Am. Order to Show Cause, Docket No. P-OSC-2021-002 (Paddock Valley Allotment); Am. Order to Show Cause, Docket No. P-OSC-2021-004 (Butcher Bar and China Creek Allotments)) (collectively, "May 2022 Orders").   Under the most recent of these statutes, signed into law on March 24, 2022, these show-cause orders initiate a process under which IDWR and the Idaho Attorney General must take a series of mandatory actions, culminating in a civil action for forfeiture against the United States in Idaho state court.

4.       These newly enacted statutes, and the forfeiture proceedings resulting from their enactment, are contrary to the Supremacy, Property, and Contract Clauses of the United States Constitution; the principle of federal sovereign immunity; and the Supremacy and Retroactivity Clauses of the Idaho Constitution. Thus, they cannot lawfully be enforced against the United States.

5.       The United States brings this action to seek a judgment against the Defendants declaring that these provisions of the Idaho Code are invalid, either facially or as applied to the United States, and permanently enjoining their enforcement.

## II.      JURISDICTION

6.       This is a civil action brought by the United States in part under the Constitution of the United States and in part under other laws. The Court has subject matter jurisdiction over this

action pursuant to 28 U.S.C. §§ 1331 (federal question), 1345 (United States as plaintiff), 1367 (supplemental jurisdiction), and 2201(a) and 2202 (Declaratory Judgment Act).

## III.   VENUE

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because (1) all Defendants reside here, (2) a substantial part of the events giving rise to this Complaint occurred here, and (3) the water rights at issue in this Complaint are located and have their places of use here.

## IV.   PARTIES

8.      Plaintiff is the United States of America, suing on its own behalf and on behalf of its executive departments and their subdivisions (hereinafter, "the agencies" or "the federal agencies"), including but not limited to those listed in Paragraphs 9 and 10 below.

9.      The United States Bureau of Land Management ("BLM") is a federal agency within the United States Department of the Interior, charged by Congress with managing the National System of Public Lands. BLM manages 11.8 million acres of public lands in Idaho. BLM's mandate, as set by Congress, includes authorizing and overseeing livestock grazing on millions of acres of these public lands.

10.     The United States Forest Service ("Forest Service") is a federal agency within the United States Department of Agriculture, charged by Congress with managing the National Forest System. The Forest Service manages 20.4 million acres of National Forest System lands in Idaho. The Forest Service's mandate, as set by Congress, includes authorizing and overseeing livestock grazing on millions of acres of these National Forest System lands.

11.     Defendant State of Idaho is a state of the United States.

12.     Defendant IDWR is an agency of the State of Idaho and is responsible for administering

water rights within the State pursuant to State law, including the challenged statutes.

13.     Defendant Gary Spackman is the Director of IDWR and, in his official capacity as Director, the show-cause orders at issue in this case were either signed by him or signed by an Acting Director on his behalf.  *See* ¶ 3, *supra*.

## V.     GENERAL ALLEGATIONS

### A.     Legal Background

14.     The Property Clause of the United States Constitution provides that "Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States."  U.S. Const. art. IV, § 3, cl. 2.

15.     The Supremacy Clause of the United States Constitution provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . , shall be the supreme Law of the Land."  U.S. Const. art. VI, cl. 2.

16.     The Contract Clause of the United States Constitution provides that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts."  U.S. Const. art.1, § 10.

17.     Under the doctrine of sovereign immunity, the United States is immune from suit, including by states, absent an express waiver by Congress.  *Block v. North Dakota*, 461 U.S. 273, 280 (1983).

18.     The McCarran Amendment is a limited waiver of the United States' sovereign immunity. It only provides consent "to join the United States as a defendant in" a "suit" for "the adjudication of rights to the use of water of a river system or other source," or "the administration of such [decreed] rights." 43 U.S.C. § 666(a). As a waiver of sovereign immunity, the Amendment "must be strictly construed in favor of the United States," *United States v. Idaho ex. rel. Dir., Idaho Dep't of Water Res.*, 508 U.S. 1, 7 (1993) (citation omitted), and does not

constitute a general waiver of federal sovereign immunity for every kind of state action related to the use or allocation of water, *Miller v. Jennings*, 243 F.2d 157, 159 (5th Cir. 1957), *cert. denied*, 355 U.S. 827 (1957).

19.     The Retroactivity Clause of the Idaho Constitution provides that "[t]he legislature shall pass no law for the benefit of a railroad, or other corporation, or any individual, or association of individuals retroactive in its operation." Idaho Const. art. XI, § 12. A law is retroactive "when it operates upon . . . rights which have been acquired . . . prior to its passage." *Frisbie v. Sunshine Mining Co.*, 457 P.2d 408, 411 (Idaho 1969).

### B.     Federal Land Management and Grazing

20.     The Taylor Grazing Act of 1934 authorizes the Secretary of the Interior to establish grazing districts and regulate their use, to protect and preserve the land and resources within such districts, to specify the amount of grazing permitted in each district, to issue permits for grazing, and to facilitate the constructions of wells, reservoirs and other improvements necessary to the care and management of the permitted livestock.  43 U.S.C. §§ 315-315c.

21.     The basic unit of BLM's livestock grazing program is an allotment, which is an area of public land designated for grazing and made available via permits or leases, typically for renewable ten-year terms. BLM grazing allotments in Idaho can vary in size from a few hundred acres to tens of thousands of acres. BLM may authorize grazing for a single permittee or multiple permittees within a single allotment. Allotments on federal lands managed by BLM are not exclusively devoted to livestock grazing; rather, such lands are generally concurrently managed for other purposes and available for other uses, ranging from recreation, to mineral development, to treaty-protected Native American uses.

22.     A variety of sources, including natural streams and artificial ponds or troughs fed by

water pipelines, may provide water for livestock consumption on BLM grazing allotments. Pipeline systems can extend for significant distances. In Idaho, it is not uncommon for a water pipeline system to provide water to multiple grazing allotments.

23. The Organic Administration Act of 1897 authorizes the Forest Service to regulate the occupancy and use of national forest land. 16 U.S.C. § 551.

24. The Supreme Court affirmed the Forest Service's authority to regulate grazing on National Forest lands over a century ago. *United States v. Grimaud*, 220 U.S. 506 (1911).

25. Through its regulatory permitting process, the Forest Service administers and controls many aspects of domestic livestock grazing on the federal lands it manages, including limiting the numbers and location of stock and authorizing, funding, facilitating, and/or constructing wells, reservoirs and other water developments. Forest Service administration of stockwater rights has the important benefit of allowing efficient use of water resources by multiple or successive permittees on the same allotment.

26. Other federal agencies also manage federal lands within Idaho. Some of these agencies allow grazing on certain of those lands and hold water rights to support their grazing programs. Those grazing programs are managed under other provisions of federal law.

27. The Idaho Supreme Court has previously recognized the critical importance of federally owned water rights to the administration of the federal lands grazing program, noting that such water rights are necessary "to ensure the perpetual use of the water for stockwatering purposes by whichever member of the public happens at any time to have the grazing permit." *United States v. State of Idaho*, 959 P.2d 449, 452-53 (Idaho 1998).

28. From 1939 to 2017, Idaho statutes authorized BLM to "appropriate for the purpose of watering livestock any water not otherwise appropriated, on the public domain." Former I.C.

§ 42-501 (repealed 2017). During this time period, like today, the United States owned few livestock; rather, the vast majority of livestock on public lands were privately owned livestock authorized to graze on federal land by BLM or the Forest Service. As explained further below, the Snake River Basin Adjudication ("SRBA"), which began in 1987 and culminated in 2014, decreed thousands of stockwater rights to the United States for use by such federally permitted, but privately owned, livestock.

**C.      The Snake River Basin Adjudication and Federal Stockwater Rights**

29.     The Snake River watershed is the tenth largest watershed in North America and covers 108,000 square miles in portions of six states (Wyoming, Idaho, Nevada, Utah, Oregon, and Washington). The largest part of the watershed is located in Idaho.

30.     The State commenced the SRBA as a general stream adjudication on November 19, 1987.

31.     In the SRBA, the United States sought and obtained decrees for thousands of water rights. The United States obtained some of these rights pursuant to the substantive law of the state ("state-based rights"), and others pursuant to federal laws that reserved them ("federal reserved rights"). Alongside other water rights, the SRBA decreed to the United States thousands of state-based stockwater rights arising from the consumption of water by livestock owned by federal grazing permittees, who grazed their livestock on federal lands managed by the federal agencies under the statutory authorizations discussed in Paragraphs 20-25, *supra*. The stockwater rights that are the subject of the State's forfeiture proceedings were decreed to the United States through the SRBA.

32.     Many of the stockwater rights sought by the United States, and decreed by the SRBA court, were created by putting water to beneficial use without obtaining a prior permit or license

from the IDWR.  These rights were decreed consistent with the longstanding recognition under Idaho law of instream stockwatering as a beneficial use appropriate for federal acquisition of water rights.  Water rights of this kind, which are based directly on the Idaho Constitution, are commonly called "constitutional" water rights (by contrast to water rights based on a prior permit or license, which are called "statutory" or "licensed" water rights). *See generally* Idaho Const. art. XV, § 3 ("The right to divert and appropriate the unappropriated waters of any natural stream to beneficial uses, shall never be denied, except that the state may regulate and limit the use thereof for power purposes."). Although such rights generally cannot be created today, in light of the enactment of the State's mandatory surface water permitting code in 1971, constitutional rights acquired before 1971 remain valid.[1]

33.     In the SRBA, the United States often sought state-based stockwater rights even when federal reserved rights might have been available, because the constitutional method of obtaining state-based water rights provided the earliest priority date for the rights.

34.     The State and a small group of federal grazing permittees contested many of the United States' claims during the SRBA, and many of the United States' decrees resulted from settlements approved by the SRBA court.

35.     In 2002, the United States reached a settlement with one such group of contesting permittees, known informally as the Federal Stockwater Group ("FSG"). The FSG settlement allowed both the United States and the FSG permittees to hold stockwater rights on water sources located on federal land and used by the permittees, with the permittees' rights typically accorded a senior priority date relative to the United States' rights. The settlement also included

---

[1] Idaho's water code exempts from the permit requirement the use of water for instream watering of stock, *see* I.C. § 42-113(1), as well as the use of groundwater for "domestic" uses which can, in some instances, include small amounts of stockwater, *see* I.C. § 42-227.

explicit agreements by the permittees to withdraw their objections to the United States'
stockwater claims, to withdraw their challenges to stockwater decrees already issued to the
United States, and to refrain from challenges to any other stockwater decrees issued to the United
States. *See* Ex. 2.

36.     In many other cases, however, no permittees contested the United States' claims or filed
claims of their own, and the United States was the only party decreed stockwater rights on a
given water source.

37.     The FSG and other settlements, along with the United States' uncontested claims,
resulted in the adjudication of thousands of stockwater rights to the United States in the SRBA,
through a series of partial decrees issued under Rule 54(b)(1) of the Idaho Rules of Civil
Procedure ("*Certificate of Partial Judgment as Final*").  This system of issuing fully binding
partial decrees allowed the SRBA to progress through individual claims rather than requiring the
full completion of the entire Snake River watershed prior to issuing any decree.  In this way, the
SRBA court decreed to the United States over 15,000 stockwater rights associated with lands
managed by the BLM, of which approximately 6,485 were for instream stockwatering (that is,
consumption of water by livestock directly from a water source, without the use of a pipeline or
other development), while the remaining water rights were for stockwatering at developed water
sources (such as troughs, stockponds, or other developments) or were decreed based on federal
law.  The SRBA court decreed to the United States nearly 9,000 stockwater rights associated
with lands managed by the Forest Service, over half of which were for stockwatering at
developed water sources.

38.     A few federal permittees chose not to settle, however, and instead continued to pursue
litigation.  In 2007, the Idaho Supreme Court ruled in favor of one such permittee in *Joyce*

*Livestock Co. v. United States*, 156 P.3d 502 (Idaho 2007).[2] *Joyce Livestock* dealt exclusively

with claims related to a single class of stockwater rights – constitutional stockwater rights

acquired through instream stockwatering – and held that, "[u]nder Idaho law, a landowner does

not own a water right obtained by an appropriator using the land with the landowner's

permission unless the appropriator was acting as agent of the owner in obtaining the water right."

*Id.* at 519.

39.     The *Joyce Livestock* decision did not affect any of the water rights that had already been

decreed to the United States. In fact, the SRBA court continued to decree claims sought by the

United States for constitutional instream stockwater rights even after *Joyce Livestock*, noting that

"[u]nder the ruling in *Joyce*, there are still factual scenarios by which it would be legally possible

for the United States to acquire [an instream constitutional] water right[,] such as through an

agency relationship or agreement with the appropriator of the water right." *In Re SRBA*, Case No.

39576, #74-15468, slip op. at 2 (Idaho Dist. Ct. Feb. 28, 2007).

40.     On August 25, 2014, the SRBA court entered a Final Unified Decree that incorporated all

the partial decrees into one final order covering 158,600 water rights. *See* Final Unified Decree,

*In Re SRBA*, Case No. 39576 (Idaho 5th Jud. Dist. Ct., Aug. 25, 2014).  This Final Unified

Decree is conclusive as to the nature and extent of all water rights within the Snake River Basin

with a priority date prior to November 19, 1987, except for a group of deferred claims not at

issue in this Complaint.[3]

---

[2] In a companion case decided the same day, the court applied its reasoning in *Joyce Livestock* to
similar facts.  *LU Ranching Co. v. United States*, 156 P.3d 590 (Idaho 2007).

[3] Two categories of claims were not included in the Final Unified Decree: (1) eighty-eight claims
that remained under litigation at the time of the Final Unified Decree; and (2) claims known as
"deferred claims," small domestic and stockwater claims for which adjudication was "deferred"
without regard to established filing deadlines in the SRBA.  *See* Order Governing Procedures in
the SRBA For Adjudication of Deferred De Minimis Domestic and Stockwater Claims (June 28,

### D.     Idaho's Legislation Targeting Federal Stockwater Rights

41.     In 2017 – a decade after the Idaho Supreme Court's *Joyce Livestock* decision – the State

of Idaho enacted Senate Bill ("S.B.") 1111, the first in a long series of laws targeting the federal

stockwater rights decreed in the SRBA and other general stream adjudications. This series of

laws has culminated, most recently, in the March, 2022, enactment of House Bill ("H.B.") 608,

which led directly to the currently pending forfeiture proceedings. This section describes these

statutes, and their evolving but ever-present threat to the federal stockwater program.

### 1.   S.B. 1111: The State of Idaho attempts to outlaw federal stockwater rights.

42.     In 2017, the State enacted its first significant modification to its stockwater rights regime

through S.B. 1111.  *See* 64th Leg., 1st Reg. Sess., 2017 Idaho Sess. Laws 408 (repealing and

replacing Chapter 5 of Title 42 of the Idaho Code).  The Idaho Governor signed S.B. 1111 into

law on March 27, 2017, and, because the bill included an "emergency" clause, the law entered

into effect, as a matter of Idaho law, that same day. 2017 Idaho Sess. Laws 409.

43.     S.B. 1111 declared that "[n]o agency of the federal government, nor any agent acting on

its behalf, shall acquire a stockwater right unless the agency owns livestock and puts the water to

beneficial use." I.C. § 42-502 (2018).  The statute went even further, prohibiting federal grazing

permittees from acting as "agent[s] of the federal government" for purposes of obtaining

stockwater rights. *Id.*

44.     While S.B. 1111 purported to "codify and enhance . . . important points of law from the

*Joyce* case," *see* I.C. § 42-501, the statute in fact departed from that decision in several ways.

45.     First, unlike the *Joyce Livestock* decision, S.B. 1111 applied only to the United States.

---

2012); *see also supra* n.1.

46.     Second, rather than merely protecting federal permittees from "unwittingly acting as . . . agent[s] of a federal agency," as asserted in the statement of legislative intent, *see id.*, the statute completely eliminated – solely for federal agencies and their permittees – the exception recognized in *Joyce Livestock* for cases in which a permittee served as an agent on behalf of the federal landowner. *See Joyce Livestock*, 156 P.3d at 519 (holding that "a landowner does not own a water right … *unless the appropriator was acting as agent of the owner*" and noting that "[t]he United States [did] not contend that any of the ranchers who obtained the water rights at issue did so as an agent of the United States" (emphasis added)).[4] The statutory prohibition applied even in cases where a permittee would choose to enter into such a relationship voluntarily and expressly.

47.     Third, S.B. 1111 extended not only to constitutional stockwater rights for instream use, but also to constitutional stockwater rights for developed sources, and to licensed statutory stockwater rights as well. The Idaho Supreme Court, in *Joyce Livestock*, expressly distinguished the constitutional, instream stockwater rights at issue in that case from other types of stockwater rights, including licensed statutory rights. *See Joyce Livestock*, 156 P.3d at 520. In particular, the court noted that its decision did not affect, and was not affected by, a longstanding state statute, enacted in 1939, which explicitly authorized the United States to obtain a stockwater right on grazing allotments administered by the BLM, because "[t]he constitutional method of appropriation and the [statutory] permit method were two separate means for acquiring water rights." *See id.*; *see also* I.C. § 42-501 (2016) ("The bureau of land management of the department of interior of the United States may appropriate for the purpose of watering livestock any water not otherwise appropriated, on the public domain.").  S.B. 1111, however, repealed

---

[4] *Joyce Livestock* cites *First Security Bank of Blackfoot v. State*, 291 P. 1064, 1066 (Idaho 1930) for this exception.

this longstanding statute. *See* S.B. 1111 § 1.

48.     S.B. 1111 therefore represented a dramatic shift in the State of Idaho's public policy

towards federal stockwater rights, going far beyond what the Idaho Supreme Court had done in

*Joyce Livestock*. At the same time, many of the changes made by S.B. 1111 appeared at the time

to have only a prospective effect, limiting the future acquisition of stockwater rights by the

United States but not affecting existing federal stockwater rights.

> ### 2. H.B. 718: The State of Idaho adopts a novel procedure for forfeiting decreed federal stockwater rights.

49.     In March, 2018, the Secretaries of the Interior and Agriculture, who oversee the BLM

and the Forest Service, respectively, each received a letter from the Idaho Governor, the Speaker

of the Idaho House of Representatives, and the President Pro Tem of the Idaho Senate. The letter

advised that "[a]dditional legislation [was] pending to clarify that federal stockwater rights not

put to beneficial use will be forfeited under State law."  The letter went on to "strongly urge [the

Secretaries] to instruct [their] departments to abandon all their Idaho stockwater rights acquired

based on a claim of beneficial use." Included as an attachment was a form from IDWR entitled

"Notice of Abandonment of Water Right."

50.     In March, 2018, the State enacted H.B. 718, which coupled the substantive legal changes

of S.B. 1111 with an aggressive new procedure designed for the sole purpose of eliminating

previously decreed federal stockwater rights.

51.     H.B. 718 had two purposes. First, it gave retroactive effect to S.B. 1111 by expressing the

intent of the legislature "that stockwater rights acquired in a manner contrary to the *Joyce*

decision are subject to forfeiture." *See* H.B. 718 § 1, 64th Leg., 2d Reg. Sess., 2018 Idaho Sess.

Laws 747 (amending I.C. § 42-501). Second, it created a new administrative procedure devoted

solely to eliminating federal stockwater rights previously decreed to the United States by the

14

SRBA court. *See id.* § 2 (amending I.C. § 42-503).

52.     The procedure created by H.B. 718 applied to all constitutional stockwater rights held by the United States, whether instream or developed, but not to licensed statutory rights. *Id.* H.B. 718 did not apply to stockwater rights owned by any person or entity other than the United States.

53.     H.B. 718 required IDWR, within ninety days, to compile a list of water rights owned by the United States purportedly subject to forfeiture and send the list "to the appropriate federal agencies." *Id.* (enacting I.C. § 42-503(1)). Thereafter, if the governor approved the list, H.B. 718 required IDWR to issue orders to show cause as to "why the stockwater right or rights should not be lost or forfeited." *Id.* (enacting I.C. § 42-503(2)).

54.     The statute gave the federal agencies three weeks after a show-cause order to request an administrative hearing before the IDWR or risk forfeiture of the listed water rights. *Id.* (enacting I.C. § 42-503(5)).  H.B. 718 authorized judicial review in Idaho state court of any resulting forfeiture decision by IDWR. *Id.* (enacting I.C. § 42-503(6)).

55.     On July 9, 2018, Governor Otter sent letters to the Secretaries of the Interior and Agriculture informing them that "[t]he Director of the Idaho Department of Water Resources has begun compiling a list of stockwater rights held by" the agencies, as required by H.B. 718.

56.     On August 28, 2018, the BLM, the Forest Service, and several other federal agencies received a spreadsheet from the Director of IDWR that listed 17,995 purportedly federally owned water rights allegedly subject to the forfeiture process established by H.B. 718. The spreadsheet identified each water right only by an alphanumeric identifier consisting of a "Basin," a "Sequence," and a "Suffix," a priority date, and a "Source List." The spreadsheet did not identify which federal agency manages each water right, whether each water right is instream

or developed, or provide any other information.

57.     Although IDWR compiled this list purporting to identify water rights owned by the
United States that were subject to forfeiture, the Governor of Idaho never formally approved the
list compiled by IDWR, as required to trigger H.B. 718's forfeiture proceedings. As described
below, the State subsequently amended its stockwater legislation several times, to eliminate the
State Executive Branch's discretion over the initiation of anti-federal forfeiture proceedings.

### 3. S.B. 1305: The State of Idaho makes federally owned stockwater rights appurtenant to the permittees' private property.

58.     At the same time that the State enacted H.B. 718, it also enacted S.B. 1305, 64th Leg., 2d
Reg. Sess., Idaho Sess. Laws 303.  S.B. 1305 amended I.C. § 42-113(2), which deals with "rights
to the use of water for in-stream or out-of-stream livestock purpose, associated with grazing on
federally owned or managed land, established under the diversion and application to beneficial
use method of appropriation" – that is, to constitutional stockwater rights located on federal
lands, whether owned by the United States or by its permittees.

59.     S.B. 1305 added a new provision to this statute, according to which "[t]he water right
shall be an appurtenance to the base property." *See* I.C. § 42-113(2)(b).[5] The statute also purports
to authorize the owner of the base property – rather than the federal agency –to convey the water
right in the event that the federal grazing permit "is transferred or otherwise conveyed to a new

---

[5]  Under the Taylor Grazing Act and associated regulations, the federal government gives a
preference to owners of stock who own "base property," *i.e.*, private land or water rights
sufficient to support their herds on federal lands.  *See, e.g.*, *Pub. Lands Council v. Babbitt*, 529
U.S. 728, 734 (2000); 43 U.S.C. § 315b. The BLM defines "base property," for purposes of
BLM grazing permits, as "(1) Land that has the capability to produce crops or forage that can be
used to support authorized livestock for a specified period of the year, or (2) water that is suitable
for consumption by livestock and is available and accessible, to the authorized livestock when
the public lands are used for livestock grazing." 43 C.F.R. § 4100.0-5 (2005).  "Base property"
is defined for Forest Service purposes as "land and improvements owned and used by the
permittee for a farm or ranch operation and specifically designated by him to qualify for a term
grazing permit." 36 C.F.R. § 222.1(b)(3) (2021).

owner." *Id.*

60.     S.B. 1305 therefore modified existing, federally owned stockwater rights by making

those water rights appurtenant to the permittees' privately owned base property, rather than to

the federally owned lands that constitute place of use (as is generally the rule in Idaho). This

enactment, too, represents a change in longstanding public policy, designed to target federally

owned stockwater rights. While *Joyce Livestock* held that constitutional, instream stockwater

rights owned by federal grazing permittees are appurtenant to those permittees' base property,

*see Joyce Livestock*, 156 P.3d at 514, the Idaho Supreme Court did not address the appurtenance

of constitutional stockwater rights owned by the United States, including rights associated with

physical diversions or rights for which the United States and its grazing permittee are in a

principal/agent relationship – which, as noted above, were not at issue in that decision. The State

of Idaho, in enacting S.B. 1305, did what the Idaho Supreme Court in *Joyce Livestock* did not

purport to do, and could not have done.

61.     The statutory changes enacted through S.B. 1305 remain in place to this day.

### 4. H.B. 592: The State of Idaho removes the Governor's check on forfeiture proceedings, and makes other changes to H.B. 718.

62.     In March 2020, the State enacted H.B. 592, 65th Leg., 2d Reg. Sess., Idaho Sess. Laws

738, which made substantial amendments to the sections of the Idaho Code previously created or

modified through S.B. 1111 and H.B. 718.  H.B. 592 did not change the section of the Idaho

Code created through S.B. 1305.

63.     H.B. 592 amended the forfeiture proceeding created by H.B. 718 to remove the

requirements that IDWR compile a list of federally owned stockwater rights and that the

Governor approve that list. Instead, H.B. 592 provided that whenever the director of IDWR

"receives a petition making a prima facie showing, or finds, on his own initiative based on

available information, that a stockwater right has not been put to beneficial use for a term of five (5) years," the director "shall expeditiously issue" an order to show cause to the owner of the stockwater right. H.B. 592, § 1 (codified at I.C. § 42-224 (2020)). After service of the IDWR director's order to show cause, the stockwater right owner would once again have twenty-one days to "request in writing a hearing" before IDWR. If the owner did not request such a hearing, the stockwater right "shall be considered forfeited." *Id.* at § 42-224(5).

64.     The new forfeiture procedures enacted through H.B. 592 applied to "all stockwater rights except those stockwater rights decreed to the United States based on federal law" – that is, to all state-law-based stockwater rights, regardless of ownership. *Id.* at § 42-224(9).

65.     While the forfeiture procedures created by H.B. 592 were not limited to stockwater rights owned by the United States, the statute did contain special notice provisions applicable only when "the order affects a stockwater right where the place of use is a federal grazing allotment." I.C. § 42-224(4) (2020). In such an instance, "the director [of IDWR] shall provide a copy of the order to the holder or holders of any livestock grazing permit or lease for said allotment." *Id*.

66.     Before the enactment of H.B. 592, a longstanding provision of the Idaho Code, section 42-222(2), provided that "[a]ll rights to the use of water acquired under this chapter or otherwise shall be lost and forfeited by a failure for the term of five (5) years to apply it to the beneficial use for which it was appropriated." Until H.B. 592 was enacted in 2020, however, no specific statutory procedures existed for applying I.C. § 42-222(2), and the provision was rarely applied. In the words of the Idaho Supreme Court, before the enactment of H.B. 592, "abandonments and forfeitures [we]re not favored" under Idaho law.  *Sagewillow, Inc. v. Idaho Dep't of Water Res.*, 70 P.3d 669, 674 (Idaho 2003) (citing *Zezi v. Lightfoot*, 68 P.2d 50 (Idaho 1937)). Therefore, like its predecessors, H.B. 592 represented a change in Idaho's longstanding public policy, designed

to target federally owned stockwater rights.

67.     H.B. 592 also removed the portions of Idaho Code section 42-502 introduced by S.B.
1111 that prohibited permittees from serving as agents on behalf of the federal agency, but
retained a prohibition against an "agency of the federal government" acquiring a stockwater right
"unless the agency owns livestock and puts the water to beneficial use." H.B. 592, § 3
(modifying I.C. § 42-502). In place of the omitted provision, H.B. 592 specified that a forfeiture
order would not be issued under the new procedures if a livestock grazing permittee "asserts a
principal/agent relationship with the federal agency managing the grazing allotment." H.B. 592,
§ 1 (creating I.C. § 42-224(10)). The statute did not specifically recognize the right of the United
States, rather than the permittee, to "assert[]" such a relationship.

68.     Finally, H.B. 592 modified I.C. § 42-504 by removing the ability of the State to approve
a purpose of use for the water right other than "watering of livestock," and instead adding
language to limit in perpetuity the place of use for a stockwater right currently located on a
federal allotment to "the federal grazing allotment that is the place of use for that stockwater
right." H.B. 592, § 5 (modifying I.C. § 42-504).

69.     On October 27, 2021 – a year and a half after the enactment of H.B. 592 – IDWR issued
its first show-cause order to the United States under the State's new stockwater forfeiture laws.
Specifically, IDWR issued an order to the Forest Service to show cause before the Director why
forty-five stockwater rights held by the United States have not been lost through forfeiture ("the
October 2021 Order"). *See* Ex. 3. The October 2021 Order further provided that if the United
States did not respond to the Order within twenty-one days, the stockwater rights would be
forfeited. *Id.*

70.     The stockwater rights at issue in the October 2021 Order were decreed by the SRBA, and

supported grazing by two separate Forest Service permittees.  On November 5, 2021, two weeks

after IDWR's October 2021 Order, one of the two permittees signed an agreement with the

Forest Service stating as follows: "The Parties agree that the availability of water on the listed

grazing allotments is critical for the grazing management of the allotments, and when domestic

livestock owned by the Permittee and located on the listed grazing allotments make use of water

by drinking from places, or sources located on [Forest Service] lands, that such use will be

deemed beneficial under Idaho state law, and is made by the Permittee acting as a limited agent

of the United States for the purposes of establishing and maintaining stockwater rights for the

United States within grazing allotments located on [Forest Service] lands, and for no other

purposes."

71.     On November 12, 2021, IDWR issued an order withdrawing its October 2021 Order, on

grounds that the agency agreement executed between the Forest Service and the permittee

satisfied the agency-relationship defense codified under H.B. 592. *See* Ex. 4 at 3 (Order

Withdrawing Order to Show Cause; Order Dismissing Pet. (Cow Creek Allotment)) (citing I.C.

§ 42-224(10) (2020)).

72.     Although IDWR received additional petitions seeking to initiate forfeiture proceedings

against federal stockwater rights, it did not act on any of these petitions before the State of Idaho

again amended its anti-federal forfeiture laws.

### 5. H.B. 608: The State of Idaho removes IDWR's discretion over forfeiture proceedings, attempts to insulate new policy from review in federal court, and imposes limits on permittee agency relationships.

73.     On March 24, 2022, the State of Idaho enacted yet another new statute – H.B. 608, 66th

Leg., 2d Reg. Sess., Ch. 215 – designed to eliminate the State Executive Branch's remaining

discretion over forfeiture proceedings, to further weaken the agency-relationship defense

recognized in *Joyce Livestock*, and to try to insulate its legislative changes against judicial review in federal court.

74.     First, H.B. 608 eliminates most of IDWR's discretion over the handling of forfeiture proceedings, providing that "[w]ithin thirty (30) days of receipt . . . of a petition or other information" seeking forfeiture of a stockwater right, IDWR "must determine whether the petition or other information, or both, presents prima facie evidence that the stockwater right has been lost through forfeiture." I.C. § 42-224(1) (2022). If IDWR determines that the petition "contains prima facie evidence of forfeiture due to nonuse," it "must within thirty (30) days issue an order to the stockwater right owners to show cause . . . why the stockwater right has not been lost through forfeiture." I.C. § 42-224(2) (2022). As under the prior laws, the owner of the stockwater right has twenty-one days to respond to the show-cause order. I.C. § 42-224(6) (2022).

75.     Second, H.B. 608 attempts to weaken further the agency-relationship defense recognized in *Joyce Livestock*. The statute now codifies this defense by specifying that IDWR "shall not issue an order to show cause where the director has or receives written evidence signed by the principal and the agent, prior to issuance of said order, that a principal/agent relationship existed during the five (5) year term [preceding the date of the petition] or currently exists between the owners of the water right as principal and a permittee or lessee as agent for the purpose of obtaining or maintaining the water right."  I.C. § 42-224(4) (2022).

76.     This codification narrows the common-law defense recognized in *Joyce Livestock* by requiring express "written evidence signed by the principal and the agent" – apparently excluding evidence of an implied principal/agent relationship. Even more restrictively, the version of the defense codified in the statute requires the agency relationship agreement to be

signed and submitted to IDWR "prior to issuance of" the show-cause order. This new

requirement, if upheld, would preclude the United States from presenting such agreements in

response to a show-cause order, as it did in the case of the October 2021 Order. Moreover,

because H.B. 608 requires IDWR to act on any "information" indicating that a stockwater right

is eligible for forfeiture, and does not require notice to the owner of the stockwater right until the

show-cause order is issued, *see* I.C. § 42-224(1), (3) (2022), the statutory deadline for presenting

such an agreement to IDWR may in some cases elapse before the United States receives any

notice that a particular stockwater right is at risk of forfeiture.

77.     Finally, H.B. 608 also includes certain provisions that appear to be intended to insulate

the State's legislative changes from judicial review in federal court, without eliminating those

proceedings' threat to federal interests. In particular, H.B. 608 now provides that any

determination by IDWR that a stockwater right has been forfeited "shall have no legal effect" on

its own. *See* I.C. § 42-224(9) (2022). Instead, such a determination triggers a mandatory

provision according to which "the state of Idaho, by and through the office of the attorney

general, ***must*** initiate a civil action" in State court within sixty days of IDWR's determination.

*See* I.C. § 42-224(10) (2022) (emphasis added).  In the subsequent judicial proceedings, IDWR

"shall not be a party," but its determination of forfeiture "shall constitute prima facie evidence

that the right has been forfeited."  *See* I.C. § 42-224(11) (2022).

78.     On April 25, 2022, IDWR issued three show-cause orders requiring the United States to

show cause within twenty-one days why eighty-one federally owned stockwater rights should not

be forfeited.  Order to Show Cause, Docket No. P-OSC-2021-001 (Crane Creek Allotment);

Order to Show Cause, Docket No. P-OSC-2021-002 (Paddock Valley Allotment); Order to Show

Cause, Docket No.  P-OSC-2021-004 (Butcher Bar and China Creek Allotments) ("the April

2022 Orders).  The April 2022 Orders were served on the United States on April 28, 2022.

79.     On May 10, 2022, the United States informed the Idaho Attorney General's office that twenty-four of the federally-owned stockwater rights listed in the April 2022 Orders were decreed based on federal law.[6]  On May 13, IDWR withdrew, amended, and reissued the three Orders, deleting the twenty water rights, stating that they "should not have been included in the list of water rights subject to the order to show cause."  May 2022 Orders, each Order at 1 ("This section applies to all stockwater rights except those stock water rights decreed to the United States based on federal law.") (citing Idaho Code § 42-224(14)).  The May 2022 Orders were served on the United States on May 16, 2022.  Under I.C. § 42-224(6) and (7), the United States therefore has until June 6, 2022, to respond to the orders, or face an administrative forfeiture determination by default.

80.     In sum, H.B. 608 represents the latest in a five-year series of enactments designed to target federally owned, decreed or licensed stockwater rights for forfeiture and to render them appurtenant to grazing permittees' private property; to eliminate the discretion of the State Executive Branch over the handling of these forfeiture proceedings; and to restrict or eliminate the common-law agency-relationship defense recognized by the Idaho Supreme Court in *Joyce Livestock*. While the details of the forfeiture procedures have evolved over time, and some of the most egregiously unlawful elements (such as H.B. 718's explicit singling out of federally owned property) have fallen by the wayside, H.B. 608 continues to pose a threat to the congressionally authorized federal grazing program.

---

[6] The federal-law basis for these water rights is a 1926 Presidential Executive Order, Public Water Reserve 107, issued pursuant to the Pickett Act, 43 U.S.C. § 141, and the Stock Raising Homestead Act, 43 U.S.C. § 300 (repealed 1976), that reserved "every smallest legal subdivision of the public land surveys which is vacant unappropriated unreserved public land and contains a spring or water hole."

## VI.    DECLARATORY RELIEF ALLEGATIONS

81.    There is an actual controversy between the United States and the Defendants with respect

to the validity of H.B. 608 and S.B. 1305.

82.    The United States asserts that sections 42-113(2)(b), 42-222(2), 42-224, 42-501, 42-502,

and 42-504 of the Idaho Code, which were enacted through S.B. 1111, H.B. 718, S.B. 1305, H.B.

592, and/or H.B. 608, and which in combination seek to divest the United States of its duly

decreed property rights, namely the fifty-seven decreed water rights listed in the May 2022

Orders, and to improperly regulate federal property and the use of federal property, are, as

applied to the United States, contrary to the United States Constitution, the Idaho Constitution,

and principles of sovereign immunity.  They are therefore invalid, and they may not be lawfully

applied or enforced against the United States or its agencies.

83.    The United States also asserts that sections 42-113(2)(b), 42-502, and 42-504 of the

Idaho Code are invalid on their face in violation of the United States Constitution and the Idaho

Constitution and, therefore, are each invalid and may not lawfully be applied or enforced against

the United States or its agencies.

84.    Upon information and belief, the Defendants, by contrast, assert that these provisions of

the Idaho Code are valid. The Defendants have begun to apply and enforce those statutes against

the United States and its agencies, and, upon information and belief, they intend to continue to

do so.

85.    Pursuant to 28 U.S.C. § 2201(a), this Court has, and should exercise, the authority to

declare the legal rights and obligations of the parties with respect to these provisions of the Idaho

Code and their application or enforcement. *See* 28 U.S.C. § 2201(a) ("any court of the United

States, upon the filing of an appropriate pleading, may declare the rights and other legal relations

of any interested party seeking such declaration, whether or not further relief is or could be

sought."). Federal Rule of Civil Procedure 57 further states that a "court may order a speedy

hearing of a declaratory-judgment action."

## VII.   FIRST CLAIM FOR RELIEF
### (Federal Sovereign Immunity)

86.     The United States incorporates by reference its previous allegations as though fully set

forth herein.

87.     H.B. 608 created a new procedure designed for the sole purpose of forfeiting previously

decreed or licensed stockwater rights.

88.     Such an administrative proceeding is not a "suit . . . for the adjudication of rights to the

use of water of a river system or other source, or . . . for the administration of such rights,"

within the meaning of the McCarran Amendment, 43 U.S.C. § 666.

89.     Because there is no applicable waiver of the United States' sovereign immunity,

Defendants cannot lawfully apply section 42-224 to the United States.

## VIII.   SECOND CLAIM FOR RELIEF
### (Supremacy Clause of the U.S. Constitution-Intergovernmental Immunity)

90.     The United States incorporates by reference its previous allegations as though fully set

forth herein.

91.     Sections 42-113(2)(b), 42-222(2), 42-224, 42-501, 42-502, and 42-504 of the Idaho Code

unlawfully target the decreed or licensed stockwater rights of the United States for regulation in

a discriminatory manner in violation of the Supremacy Clause of the United States Constitution.

92.     Section 42-113(2)(b) of the Idaho Code discriminates against the United States and its

agencies because it makes constitutional stockwater rights "associated with grazing on federally

owned or managed land"– including such rights owned by the United States – appurtenant to the

grazing permittees' private property, rather than to the federally owned lands that constitute the

place of use.

93.     Section 42-502 of the Idaho Code discriminates against the United States and its agencies

because it prohibits the United States from owning stockwater rights unless it owns livestock.

94.     Section 42-504 of the Idaho Code discriminates against the United States and its agencies

because it provides limitations on stockwater rights located upon federal grazing allotments that

are not applicable to stockwater rights located on other lands, including those lands held by

private owners or the State of Idaho.

95.     In so discriminating against the United States and its agencies, sections 42-502 and 42-

504 violate the Supremacy Clause of the United States Constitution.

96.     In addition, the challenged Idaho laws, taken together, evidence Defendants' intent to

treat the decreed water rights of the United States in a discriminatory manner in violation of the

Supremacy Clause of the United States Constitution.

## IX.    THIRD CLAIM FOR RELIEF
### (Property Clause of the U.S. Constitution)

97.     The United States incorporates by reference its previous allegations as though fully set

forth herein.

98.     Sections 42-113(2)(b), 42-222(2), 42-224, 42-501, and 42-502 of the Idaho Code as

applied by Defendants purport to divest the United States and its agencies of vested property

decreed to the United States by the SRBA court or licensed by IDWR.  The Property Clause of

the United States Constitution, however, provides that the "[p]ower to release or otherwise

dispose of the rights and property of the United States is lodged in the Congress." *Royal*

*Indemnity Co. v. United States*, 313 U.S. 289, 294 (1941).

99.     By purporting to divest the United States and its agencies of property without
congressional authorization, sections 42-113(2)(b), 42-222(2), 42-224, 42-501, and 42-502 of the
Idaho Code violate the Property Clause of the United States Constitution.

## X.     FOURTH CLAIM FOR RELIEF
### (Contract Clause of the U.S. Constitution)

100.    The United States incorporates by reference its previous allegations as though fully set
forth herein.

101.    Idaho Code sections 42-113(2)(b), 42-222(2), 42-224, 42-501, and 42-502 collectively
abrogate legal settlements negotiated and agreed to by the United States and numerous other
parties.

102.    An explicit condition of these settlements, agreed to by the other settling parties in return
for substantial concessions granted by the United States, was the decree by the SRBA court to
the United States of numerous water rights now threatened with divestiture and/or forfeiture by
Idaho Code sections 42-113(2)(b), 42-222(2), 42-224, 42-501, and 42-502. Securing decrees for
these water rights was one of the primary benefits obtained by the United States in entering into
these settlements.

103.    By operating as a substantial impairment of this contractual relationship, Idaho Code
sections 42-113(2)(b), 42-222(2), 42-224, 42-501, and 42-502 violate the Contract Clause of the
United States Constitution.

## XI.     FIFTH CLAIM FOR RELIEF
### (Retroactivity Clause of the Idaho Constitution)

104.    The United States incorporates by reference its previous allegations as though fully set
forth herein.

105.    Idaho Code Section 42-224 provides a forfeiture proceeding by which to eliminate

stockwater rights that were previously lawfully decreed to the United States.

106.    Idaho law provides that "when any right to the use of water shall be lost through . . . forfeiture such rights to such water shall . . . be again subject to appropriation." I.C. § 42-222(2). Therefore, forfeiture of the United States' stockwater rights would benefit other water users by making the water currently subject to those federal stockwater rights available for appropriation by other water users.

107.    By operating retroactively for the benefit of other water users by forfeiting the United States' previously obtained water rights, Idaho Code § 42-224 violates the Retroactivity Clause of the Idaho Constitution, Idaho Const. art. XI, § 12.

108.    In addition, by retroactively declaring stockwater rights appurtenant to a grazing permit holder's private property and not to the place of use (federal property), Idaho Code § 42-113(2)(b), by retroactively invalidating contractual agreements entered into by the United States and confirmed by Idaho courts, and by retroactively imposing limitations on the purpose and place of use of federally owned stockwater rights, I.C. § 42-504, the Idaho statutes violate the Retroactivity Clause of the Idaho Constitution, Idaho Const. art. XI, § 12.

## XII.    PRAYER FOR RELIEF

109.    Wherefore, Plaintiff United States of America prays that the Court enter judgment against the Defendants and award the following relief:

(a)     a declaration that Idaho Code sections 42-113(2)(b), 42-222(2), 42-224, 42-501, and 42-502, which together purport to divest and/or forfeit decreed rights of the United States, are invalid as applied to the United States of America and its agencies;

(b)     a declaration that sections 42-113(2)(b), 42-502, and 42-504 are invalid on their face and as applied to the United States of America and its agencies;

(c)      orders temporarily and permanently enjoining application of  sections 42-113(2)(b), 42-222(2), 42-224, 42-501, 42-502, and 42-504 to the United States of America or its agencies;

(d)      the United States' costs; and

(e)      such other and further relief as the Court deems just and proper.

Respectively submitted, this 2d day of June, 2022.

RAFAEL M. GONZALEZ JR.
United States Attorney
CHRISTINE ENGLAND
Assistant United States Attorney

TODD KIM
Assistant Attorney General
U.S. Department of Justice
STEPHEN G. BARTELL
Assistant Section Chief
THOMAS K. SNODGRASS
Senior Attorney

*/s/   David Negri*
DAVID L. NEGRI
U.S. Department of Justice
c/o United States Attorney's Office
1290 West Myrtle Street, Suite 500
Boise, ID 83702
(208) 334-1936
