William G. Myers III (ISB #5598)
Murray D. Feldman (ISB #4097)
Alison C. Hunter (ISB #8997)
HOLLAND & HART LLP
800 W. Main Street, Suite 1750
Boise, ID 83702-5974
Telephone: (208) 342-5000
Facsimile: (208) 343-8869
wmyers@hollandhart.com
mfeldman@hollandhart.com
achunter@hollandhart.com

*Attorneys for Applicants-in-Intervention Idaho Legislature*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Case No. 1:22-cv-00236-DKG ) |
| v. | ) **IDAHO LEGISLATURE'S** ) **MEMORANDUM IN SUPPORT OF** ) **MOTION TO INTERVENE AS** |
| STATE OF IDAHO; IDAHO DEPARTMENT OF WATER RESOURCES, an agency of the State of Idaho; and GARY SPACKMAN, in his official capacity as Director of the Idaho Department of Water Resources, | ) **DEFENDANTS** ) ) ) ) ) ) |
| Defendants. | ) ) |
| IDAHO HOUSE OF REPRESENTATIVES; MIKE MOYLE, in his official capacity as Majority Leader of the House; IDAHO SENATE; and CHUCK WINDER, in his official capacity as President Pro Tempore of the Senate, | ) ) ) ) ) ) ) ) |
| Proposed Intervenor-Defendants. | ) ) |

# Table of Contents

Page

Table of Authorities ................................................................................................................. ii

Introduction ...............................................................................................................................1

Factual and Legal Background .................................................................................................1

Argument ..................................................................................................................................4

    I.   The Legislature is Entitled to Intervene as of Right. ..................................................4

        A. The Legislature's Motion to Intervene is Timely. .................................................6

        B. The Legislature has Significant Protectable Interests in this Action. ...................6

        C. The Legislature's Interest in the United States' Compliance with the Stockwater Statutes will be Impaired if the Court Rules in Favor of the United States. ......................9

        D. The Legislature's Interests Cannot be Adequately Represented by Existing Parties ....................................................................................................................10

    II.  In the Alternative, the Legislature may Permissively Intervene. .........................12

Conclusion ..............................................................................................................................13

## Table of Authorities

**Page(s)**

### CONSTITUTION

Idaho Const. art. III, § 1 ........................................................................................................1, 2

Idaho Const., art. XV, § 1 .........................................................................................................2, 8

### CASES

*Amanatullah v. U.S. Life Ins. Co.*,
  Case No. 4:15-cv-00056-EJL, 2017 WL 2906045 (D. Idaho June 29, 2017) ...................12, 13

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*,
  135 S. Ct. 2652 (2015) ..............................................................................................................7, 9

*Arizonans for Official English v. Arizona*,
  520 U.S. 43 (1997) ........................................................................................................................7

*Berger v. N.C. State Conference of the NAACP*,
  No. 21-248, 2022 U.S. LEXIS 3052 (U.S. June 23, 2022) .............................................. passim

*Cameron v. EMW Women's Surgical Center, P.S.C.*,
  212 L. Ed. 2d 114 (2022) ............................................................................................................7

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
  647 F.3d 893 (9th Cir. 2011) ....................................................................................................11

*Gregory v. Ashcroft*,
  501 U.S. 452 (1991) .....................................................................................................................1

*Joyce Livestock Co. v. United States*,
  156 P.3d 502 (Idaho 2007) ......................................................................................................2, 3

*Karcher v. May*,
  484 U.S. 72 (1987) ...................................................................................................................7, 8

*LU Ranching Co. v. United States*,
  156 P.3d 590 (Idaho 2007) .........................................................................................................2

*Reclaim Idaho v. Denney*,
  497 P.3d 160 (Idaho 2021) .........................................................................................................8

*Smith v. L.A. Unified Sch. Dist.*,
  830 F.3d 843 (9th Cir. 2016) ......................................................................................................6

*Sw. Center for Biological Diversity v. Berg*,
  268 F.3d 810 (9th Cir. 2001) ......................................................................................................5

*Trbovich v. United Mine Workers of Am.*,
  404 U.S. 528 (1972) ........................................................................................................10

*W. Watersheds Project v. Ashe*,
  Case No. 4:11-CV-00462-EJL, 2012 WL 12899085 (D. Idaho Mar. 1, 2012) ..........................6

*W. Watersheds Project v. U.S. Fish and Wildlife Serv.*,
  No. 4:CV 10-229-BLW, 2011 WL 2690430 (D. Idaho July 9, 2011) ...................................5, 6

*W. Watersheds Project v. U.S. Forest Serv.*,
  Case No. 1:15-cv-00218-REB, 2015 WL 7451169 (D. Idaho Nov. 23, 2015) ...................6, 12

*Wilderness Soc'y v. U.S. Forest Serv.*,
  630 F.3d 1173 (9th Cir. 2011) ..........................................................................................6

## STATUTES

28 U.S.C. § 1331 ................................................................................................................13

28 U.S.C. § 1367 ................................................................................................................13

I.C. § 42-101 .......................................................................................................................1

I.C. § 42-222 .......................................................................................................................4

I.C. § 42-224 ...................................................................................................................4, 12

I.C. § 67-465 ............................................................................................................... passim

## COURT RULES

Federal Rules of Civil Procedure 24 ................................................................................ passim

## OTHER AUTHORITIES

Ann Y. Vonde et al., *Understanding the Snake River Basin Adjudication,* 52 Idaho L.
  Rev. 53 (2016) .................................................................................................................2

7C WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 1909 (3d ed. Sept. 2018) ...................10

**Introduction**

It is "[t]hrough the structure of its government, and the character of those who exercise government authority," that "a State defines itself as a sovereign." *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991). An important exercise of State sovereign authority is the exercise of a state legislature's lawmaking power and relatedly the defense of such state laws from constitutional attack. The people of Idaho, through their elected representatives, have determined that the Legislature, a constitutional department of the State, is a necessary and proper, independent branch of state government to exercise this sovereign authority. Idaho Const. art. III, § 1; I.C. § 67-465.

Accordingly, the House of Representatives and Senate of the State of Idaho and their respective leaders (collectively the "Legislature") seek to intervene as defendants to defend the constitutionality of Idaho Code §§ 42-113, 42-222, 42-224, 42-501, 42-502, and 42-504 (collectively, the "Stockwater Statutes") from the challenges raised by the federal government. The Legislature's intervention will not delay this proceeding, as the Legislature is prepared to meet any deadlines the Court sets for this litigation. Additionally, none of the existing parties to the action can adequately represent the Legislature's unique and separate interests.

Because the Legislature meets the requirements for intervention as of right under Federal Rules of Civil Procedure 24(a) or, alternatively, the broad standard for permissive intervention under Rule 24(b), the Legislature respectfully requests leave to intervene as defendants.

**Factual and Legal Background**

The waters of the State of Idaho are held in trust by the State for the use and benefit of the people and resources of the State. "All the waters of the state . . . are declared to be the property of the state, whose duty it shall be to supervise their appropriation and allotment to those diverting same . . . .". I.C. § 42-101. It is the unique province and interest of the

**IDAHO LEGISLATURE'S MEM. SUPP. MOT. TO INTERVENE - 1**

Legislature to establish the laws and framework for the other branches of Idaho's government—the courts and the executive—to administer and manage the waters of the State. Idaho Const., art. XV, § 1 ("The use of all waters now appropriated, or that may hereinafter be appropriated . . . is hereby declared to be a public use, and subject to the regulations and control of the state in the manner prescribed by law."); *id*. art. III, § 1 ("The legislative power of the state shall be vested in a senate and house of representatives.").

In fulfilling these constitutional duties, the State of Idaho has been diligently working to adjudicate the water rights throughout the state. The process involves lengthy, basin-wide adjudications that can take many years. *See, e.g.*, I.C. §§ 42-1405 to -1406, -1407 to -1424 (statutory procedures for the initiation and administration of a general water rights adjudication in Idaho). The Snake River Basin Adjudication ("SRBA"), which began in 1987 and culminated in 2014, decreed thousands of water rights to the United States for the beneficial use of watering livestock on federal lands. *See generally* Ann Y. Vonde et al., *Understanding the Snake River Basin Adjudication,* 52 Idaho L. Rev. 53 (2016). The stockwater rights that are the subject of the United States' complaint and the State's current administrative proceedings were decreed to the United States through the SRBA.

In 2007, the Idaho Supreme Court ruled in favor of federal grazing permittees who objected to the United States' stockwater claims. *Joyce Livestock Co. v. United States* (*Joyce Livestock*), 156 P.3d 502 (Idaho 2007)[1]. *Joyce Livestock* dealt with claims related to constitutional stockwater rights acquired through instream stockwatering and held that an agency

---

[1] *See also LU Ranching Co. v. United States*, 156 P.3d 590 (Idaho 2007) (companion case to *Joyce Livestock*)

**IDAHO LEGISLATURE'S MEM. SUPP. MOT. TO INTERVENE - 2**

of the federal government cannot obtain a stockwater right under Idaho law unless it actually owns livestock and puts the water to beneficial use. *Id.* at 519.

In *Joyce Livestock*, the Idaho Supreme Court held that the United States "bases its claim upon the [state] constitutional method of appropriation. That method requires that the appropriator actually apply the water to a beneficial use. Since the United States has not done so, the district court did not err in denying its claimed water rights." *Id*. at 520. The court also held that federal ownership or management of the land alone does not qualify it for stockwater rights.

As the Idaho Supreme Court explained:

> The United States claimed instream water rights for stock watering based upon its ownership and control of the public lands coupled with the Bureau of Land Management's comprehensive management of public lands under the Taylor Grazing Act . . . The argument of the United States reflects a misunderstanding of water law . . . As the United States [Supreme Court] has held, Congress has severed the ownership of federal lands from the ownership of water rights in nonnavigable waters located on such lands.
>
> …
>
> Under Idaho Law, a landowner does not own a water right obtained by an appropriator using the land with the landowner's permission unless the appropriator was acting as agent of the owner in obtaining that water right . . . "If the water right was initiated by the lessee, the right is the lessee's property, unless the lessee was acting as the agent of the owner . . ." The Taylor Grazing Act expressly recognizes that ranchers could obtain their own water rights on federal land.

156 P.3d 518-521.

Since 2017, the Legislature has revised and added to the Idaho Code to clarify and refine the stockwater laws in light of the *Joyce Livestock* decision. Decl. of Chuck Winder ("Winder Decl."), filed contemporaneously, ¶¶ 3-5; Decl. of Mike Moyle ("Moyle Decl."), filed contemporaneously, ¶¶ 3-5. These Idaho statutes, among other things, establish a procedure for

**IDAHO LEGISLATURE'S MEM. SUPP. MOT. TO INTERVENE - 3**

the forfeiture of existing stockwater rights under Idaho Code § 42-222(2), first codified in 1903. *See* I.C. § 42-224(1).

On May 13, 2022, the State of Idaho and the Idaho Department of Water Resources ("IDWR"), acting through the Director of IDWR (collectively, "the State Defendants"), issued three orders requiring the United States to show cause within twenty-one days why fifty-seven federally owned stockwater rights should not be forfeited for non-use. Under the 119-year-old Idaho forfeiture statute as amended and the most recent of these Stockwater Statutes, signed into law on March 24, 2022, these show cause orders initiate a process under which IDWR and the Idaho Attorney General must take a series of actions potentially, but not necessarily, culminating in a civil action for forfeiture against the United States in Idaho state court. On June 22, 2022, IDWR issued another show cause order regarding federal stockwater rights on Forest Service lands in Idaho. Following the issuance of the show cause orders, the United States government sued IDWR and the Director of IDWR (Dkt. 1; 11) challenging the constitutionality of Idaho Code §§ 42-113, 42-222, 42-224, 42-501, 42-502, and 42-504 (collectively, the "Stockwater Statutes"). Winder Decl. ¶ 6; Moyle Decl. ¶ 6.

## Argument

Rule 24 provides for two means by which an applicant may intervene in an action: intervention as of right under subsection (a) and permissive intervention under subsection (b). The proposed Defendant-Intervenors comprising and leading the Idaho Legislature satisfy both standards.

I. **The Legislature is Entitled to Intervene as of Right.**

Rule 24(a)(2) in relevant part provides:

> On timely motion, the court must permit anyone to intervene who
> . . . claims an interest related to the property or transaction that is
> the subject of the action, and is so situated that disposing of the

**IDAHO LEGISLATURE'S MEM. SUPP. MOT. TO INTERVENE - 4**

> action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

In *Southwest Center for Biological Diversity v. Berg* (*Berg*), 268 F.3d 810 (9th Cir. 2001), the Ninth Circuit held that the district courts must construe this rule liberally in favor of intervention. *Id.* at 818. This Court's evaluation is "guided primarily by practical considerations," not technical distinctions. *Id.* The applicant for intervention as of right must satisfy a four-part test from *Berg*:

> (1) the application for intervention must be timely;
>
> (2) the applicant must have a 'significantly protectable' interest related to the property or transaction that is the subject of the action;
>
> (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and
>
> (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit.

*W. Watersheds Project v. U.S. Fish and Wildlife Serv.*, No. 4:CV 10-229-BLW, 2011 WL 2690430 at *2 (D. Idaho July 9, 2011) (*citing Berg*, 268 F.3d at 817).

Proposed Intervenors are deeply concerned with defending the laws that the Legislature has passed pursuant to its constitutional authority and that serve the State's vital interest in managing the State's water resources and protecting those resources in this arid land from waste or non-use. Here, the Legislature is entitled to intervene as of right. Its motion is timely; the Legislature has significant, protectable interests that could be impaired by the disposition of this action; and no other parties adequately represent the Legislature's unique and separate interests in this case.

**IDAHO LEGISLATURE'S MEM. SUPP. MOT. TO INTERVENE - 5**

A. **The Legislature's Motion to Intervene is Timely.**

Three factors determine whether an intervention motion is timely: (1) the stage of the proceeding; (2) prejudice to other parties; and (3) reason for, and length of any delay. *W. Watersheds Project v. Ashe*, Case No. 4:11-CV-00462-EJL, 2012 WL 12899085 at *2 (D. Idaho Mar. 1, 2012); *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016).

The Legislature's motion is timely. The First Amended Complaint (Dkt. 11) was filed three days before this filing. The case is in the earliest stages and no litigation plan has been entered. By seeking intervention now, the Legislature avoids prejudicing the other parties or disrupting the case's management or schedule.

B. **The Legislature has Significant Protectable Interests in this Action.**

Intervention of right requires the proposed intervenor to demonstrate a significantly protectable interest that may be impaired by the proceeding before the court. This factor is often considered together with the third factor that considers whether the applicant's interest could be impaired by the court's determination. *See, e.g.*, *W. Watersheds Project v. U.S. Fish and Wildlife Serv.*, 2011 WL 2690430 at *3. In considering both factors, the court follows "'practical and equitable considerations and construe[s] the Rule broadly in favor of proposed intervenors.'" *Id.* (citing *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011)); *see also W. Watersheds Project v. U.S. Forest Serv.*, Case No. 1:15-cv-00218-REB, 2015 WL 7451169 at *2 (D. Idaho Nov. 23, 2015).

Proposed Intervenors have a significant, protectable interest in the upholding the validity of the Stockwater Statutes that they enacted. Indeed, as the United States Supreme Court very recently stated: "No one questions that States possess a legitimate interest in the continued enforcement of their own statutes." *Berger v. N.C. State Conference of the NAACP* (*Berger*), No. 21-248, 2022 U.S. LEXIS 3052, at *19 (U.S. June 23, 2022) (cleaned up) (holding that

**IDAHO LEGISLATURE'S MEM. SUPP. MOT. TO INTERVENE - 6**

North Carolina's legislative leaders were entitled to intervene in litigation challenging voter identification laws that were already being defended by the State's Attorney General); *see also Cameron v. EMW Women's Surgical Center, P.S.C.*, 212 L. Ed. 2d 114, 124 (2022).

State legislatures have a unique and separate institutional interest as an independent branch of the sovereign state government in seeing that their enactments are not "nullified." *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2665 (2015). Longstanding U.S. Supreme Court authority establishes that legislatures and state legislative officials have the authority to defend (or in appropriate circumstances contest) state enactments in federal court when State law "authorize[s]" them "to represent the [State] Legislature in litigation." *Karcher v. May* (*Karcher*), 484 U.S. 72, 81 (1987); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 65 (1997) ("[S]tate legislators have standing to contest a decision holding a state statute unconstitutional if state law authorizes legislators to represent the State's interests.").

Here, Idaho law expressly authorizes the Idaho House and Senate to intervene in actions like this. Section 67-465 of the Idaho Code provides:

> When a party to an action challenges in state or federal court the constitutionality of an Idaho statute, facially or as applied, challenges an Idaho statute as violating or being preempted by federal law, or otherwise challenges the construction or validity of an Idaho statute, either or both houses of the legislature may intervene in the action as a matter of right by serving a motion upon the parties as provided in state or federal rules of civil procedure, whichever is applicable.

This Idaho law establishes the Legislature's interest and qualifies it to defend the Stockwater Statutes under *Karcher*. There, the Supreme Court reasoned that New Jersey legislative officials had standing to defend New Jersey law because "[t]he New Jersey Supreme Court has granted applications of the Speaker of the General Assembly and the President of the

**IDAHO LEGISLATURE'S MEM. SUPP. MOT. TO INTERVENE - 7**

Senate to intervene as parties-respondent on behalf of the legislature in defense of a legislative enactment." 484 U.S. at 82. Similarly, even prior to *Berger* and the enactment of I.C. § 67-465, the Idaho Supreme Court has allowed the Legislature to intervene in an action against the State of Idaho challenging a specific legislative enactment. *See, e.g.*, *Reclaim Idaho v. Denney*, 497 P.3d 160, 166 (Idaho 2021) (in review of challenge to initiative and referendum procedures statutes, reciting that the "petition is opposed by the Idaho Secretary of State . . . , who is represented by the Attorney General, as well as the Intervenor-Respondents [legislative leaders] . . . and the Sixty-Sixth Idaho Legislature (collectively 'the Legislature'), which retained independent counsel") (footnote omitted).

In *Berger*, the Supreme Court explained that when a State chooses to divide its sovereign authority among different officials and authorizes their participation in a suit challenging state law, full consideration of the state's interests may require the involvement of various officials. *Berger*, 2022 U.S. LEXIS 3052, at *21. Further, the Court reasoned that intervention by the legislators neither violated the North Carolina Constitution nor gave them authority beyond what the law already provides them. *Id*. at *24.

So too here. The Idaho Legislature is authorized by state statute to intervene in precisely this type of case. I.C. § 67-465; Winder Decl. ¶ 7; Moyle Decl. ¶ 7. Additionally, the Legislature has a significant interest in defending the Stockwater Statutes it passed from constitutional challenges. *Id*.; *see, e.g.*, Idaho Const. art. XV, § 1 (The use of all appropriated state water is a public use subject to regulations and control of the state "in the manner prescribed by law."), § 7 (There is constituted within the state a water resource agency composed and with powers "under such laws as may be prescribed by the Legislature"); *Id.* art. XVI § 1 (The Legislature may establish regulations "as may be necessary for the protection of stock

**IDAHO LEGISLATURE'S MEM. SUPP. MOT. TO INTERVENE - 8**

owners and most conducive to the stock interests within this state.")   The Legislature's significant, protectable, interest in stockwater rights is evidenced by the numerous enactments it has undertaken in recent years as alleged, albeit inaccurately, in Plaintiff's amended complaint. Dkt. 11 at 12-24.

In sum, with the codification of I.C. § 67-465, this Court need not infer an interest recognized from a prior state court decision but rather can rely upon the express provisions of State statutory law.  In any event, the Legislature has demonstrated protectable interests under either approach.  Thus, the Legislature's significant, direct, and legally protectable interests in upholding the constitutionality of the Stockwater Statutes support intervention as of right.

### C. The Legislature's Interest in the United States' Compliance with the Stockwater Statutes will be Impaired if the Court Rules in Favor of the United States.

The third intervention factor—practical impairment of interests—is generally met through a showing that the Legislature's interests are directly contrary to Plaintiffs' interests. *Alliance for the Wild Rockies*, 2016 WL 7626528 at *2.

The disposition of the present case could, as a practical matter, impair the Legislature's interests in ensuring that the laws they passed as the duly elected representatives of the people of Idaho remain in effect.  *See Berger*, 2022 U.S. LEXIS 3052, at *19-*20 ("[F]ederal courts should rarely question that a State's interests will be practically impaired or impeded if its duly authorized representatives are excluded from participating in federal litigation challenging state law."); Winder Decl. ¶ 8; Moyle Decl. ¶ 8.  Plaintiff asks this Court to declare the Stockwater Statutes unconstitutional under the Supremacy, Property, and Contract Clauses of the United States Constitution; federal sovereign immunity; and the Retroactivity Clause of the Idaho Constitution.  *See* Dkt. 11 ¶ 4.  If the Court grants this relief, the Legislature's efforts to pass the

**IDAHO LEGISLATURE'S MEM. SUPP. MOT. TO INTERVENE - 9**

Stockwater Statutes will have been "completely nullified." *Ariz. State Legislature*, 135 S. Ct. at 2665.

And the Supreme Court instructs that "[p]ermitting the participation of lawfully authorized state agents promotes informed federal-court decisionmaking and avoids the risk of setting aside duly enacted state law based on an incomplete understanding of relevant state interests." *Berger*, 2022 U.S. LEXIS 3052, at *21. As in *Berger*, the State of Idaho through its codification of I.C. § 67-465 "has made plain that it considers the [Legislature] 'necessary parties' to suits like this one." *Id*. at *22. "[A] full consideration of the State's practical interests may require involvement of different voices with different perspectives. . . essential to a fair understanding of its interests." *Id*. at *25.

Thus, the Legislature demonstrates that its significant protectable interests could practically be impaired by the outcome of this case.

### D.   The Legislature's Interests Cannot be Adequately Represented by Existing Parties.

"The requirement of [inadequate representation] is satisfied if the applicant shows that representation of his interest may be inadequate." *Trbovich v. United Mine Workers of Am*., 404 U.S. 528, 538 n.10 (1972) (emphasis added). The adequacy of representation test presents "proposed intervenors with only a minimal challenge." *Berger*, 2022 U.S. LEXIS 3052, at *26; *Trbovich*, 404 U.S. at 538 n.10; *see also* 7C WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 1909 (3d ed. Sept. 2018) ("[T]here is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests and to be liberal in finding that one who is willing to bear the cost of separate representation may not be adequately represented by the existing parties.").

**IDAHO LEGISLATURE'S MEM. SUPP. MOT. TO INTERVENE - 10**

The Ninth Circuit's three-part test is: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011).

The Supreme Court in *Berger* addressed the inadequacy of a state Attorney General's sole representation of a legislature. The Supreme Court held that the existing parties did not adequately represent the legislators' interests, as the presumption of adequate representation is "inappropriate" when a legislatively authorized state party seeks to intervene. *Berger*, 2022 U.S. LEXIS 3052, at *29 ("Normally, a State's chosen representatives should be greeted in federal court with respect, not adverse presumptions.") Accordingly, the Supreme Court held that the legislators should be allowed to intervene as of right. The same result should apply here.

The Legislature's interests here are also narrower and more specific—and apart from—the broader overall State interests represented by the State of Idaho defendant parties here. The State Defendants represent the full breadth of Idaho's state government including the Department of Water Resources, other executive agencies and the Governor, and the water adjudication courts. But only the Legislature itself can focus on the legislative interests of the people of the State as exercised through their duly elected state Senators and Representatives. It is these unique interests and perspectives, previously recognized in other cases, and unable to be represented by the other parties to this action, that further establish the inadequacy of representative by the existing parties here. *See*, *e.g.*, *Berger*, 2022 U.S. LEXIS 3052, at *29; Winder Decl. ¶ 9; Moyle Decl ¶ 9.

**IDAHO LEGISLATURE'S MEM. SUPP. MOT. TO INTERVENE - 11**

Additionally, the Legislature may take positions on the merits that would offer a different perspective than that of the State Defendants. For example, Defendants IDWR and Director Spackman have asserted in the show cause orders that instigated this litigation that water right forfeiture "is disfavored in Idaho law." *See, e.g.*, Am. Order Partially Granting Pet.; Am. Order to Show Cause, Dkt. 1-1 at 5; Winder Decl. ¶ 9; Moyle Decl. ¶ 9. While that may be an accurate statement for Idaho water rights generally, forfeiture of stockwater rights cannot be said to be disfavored given I.C. § 42-224's detailed procedures for determining when and how such rights should be forfeited. The Legislature's lawmaking experience, especially in this water rights administration realm, would assist the Court in understanding the broader implications of the case on Idaho laws and governance, thus demonstrating its interests may not be adequately represented by the State Defendants. *W. Watersheds Project v. U.S. Forest Serv.*, 2015 WL 7451169 at *2.

In sum, the Legislature should be allowed to intervene as of right because the motion is timely, the Legislature has significant protectable interests in defending the constitutionality of the Stockwater Statutes that would be impaired if the Plaintiff prevails on some of its claims in the case, and the existing parties do not adequately represent the Legislature's unique and separate interests as the independent, co-equal lawmaking branch of state government.

**II.     In the Alternative, the Legislature may Permissively Intervene.**

Alternatively, the Legislature should be permitted to intervene permissively pursuant to Rule 24(b)(1)(B), which provides:

> On timely motion, the court may permit anyone to intervene who
> . . . has a claim or defense that shares with the main action a
> common question of law or fact.

Permissive intervention may be granted where "(1) there is an independent ground for jurisdiction; (2) the motion is timely; and (3) the movant's claim or defense and the main action

**IDAHO LEGISLATURE'S MEM. SUPP. MOT. TO INTERVENE - 12**

must have a common question of the law or fact in common." *Amanatullah v. U.S. Life Ins. Co.*, Case No. 4:15-cv-00056-EJL, 2017 WL 2906045 at *1 (D. Idaho June 29, 2017) (citation omitted). Additionally, the court will consider whether intervention will unduly delay or prejudice the original parties and whether the movant's interests are adequately represented by existing parties. *Id.*

The Legislature satisfies each of these requirements. An independent ground for jurisdiction exists through the federal question statute, 28 U.S.C. § 1331, augmented through supplemental jurisdiction under 28 U.S.C. § 1367. As above, the motion is timely and will not delay proceedings or otherwise prejudice existing parties. The Legislature will comply with any briefing schedule set by the Court. Similarly, the Legislature explained above why the existing parties cannot adequately represent its interests. Finally, the Legislature's defenses share with the "main action" questions of both law and fact. Rule 24(b)(2)(B). Information and argument provided by the Legislature will squarely address these factual and legal questions.

Therefore, the criteria for permissive intervention are also met here.

## Conclusion

The Legislature's motion to intervene as Defendants as of right pursuant to Rule 24(a)(2), or alternatively permissively pursuant to Rule 24(b), should be granted.

**IDAHO LEGISLATURE'S MEM. SUPP. MOT. TO INTERVENE - 13**

Respectfully submitted this 18th day of July, 2022.

                HOLLAND & HART LLP

                By: */s/ William G. Myers III*
                    William G. Myers III
                    Murray D. Feldman
                    Alison C. Hunter

                *Attorneys for Applicants-in-Intervention*
                *Idaho Legislature*

19238794_v3

**IDAHO LEGISLATURE'S MEM. SUPP. MOT. TO INTERVENE - 14**