JOSHUA D. HURWIT, Idaho State Bar No. 9527
United States Attorney, District of Idaho
CHRISTINE ENGLAND, Idaho State Bar No. 11390
Assistant United States Attorney, District of Idaho
1290 West Myrtle Street, Suite 500
Boise, ID 83702
Tel: (208) 334-1211; Fax: (208) 334-9375
Christine.England@usdoj.gov

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
STEPHEN G. BARTELL, Colorado Bar No. 21760
Assistant Section Chief, Natural Resources Section
stephen.bartell@usdoj.gov
DAVID L. NEGRI, Idaho State Bar No. 6997
Trial Attorney, Natural Resources Section
c/o U.S. Attorney's Office
1290 West Myrtle Street, Suite 500
Boise, ID 83702
Tel: (208) 334-1936; Fax: (208) 334-1414
david.negri@usdoj.gov
THOMAS K. SNODGRASS, Colorado Bar No. 31329
Senior Attorney, Natural Resources Section
999 18th Street, South Terrace, Suite 370
Denver, CO 80202
Telephone: 303-844-7233; Fax: 303-844-1350
thomas.snodgrass@usdoj.gov
*Counsel for Plaintiff United States of America*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>STATE OF IDAHO; IDAHO DEPARTMENT OF WATER RESOURCES, an agency of the State of Idaho; and GARY SPACKMAN, in his official capacity as Director of the Idaho Department of Water Resources,<br><br>　　　　Defendants, | ) Case No. 1:22-cv-00236-DCN<br>)<br>)<br>) **UNITED STATES' OPPOSITION TO**<br>) **JOYCE LIVESTOCK CO., LU**<br>) **RANCHING CO., PICKETT RANCH &**<br>) **SHEEP CO., AND IDAHO FARM**<br>) **BUREAU FEDERATION'S MOTION TO**<br>) **INTERVENE AS DEFENDANTS (ECF**<br>) **NO. 19)**<br>)<br>) |

|  |  |  |
|---|---|---|
| v. | ) ) | |

IDAHO HOUSE OF REPRESENTATIVES; MIKE MOYLE, in his official capacity as Majority Leader of the House; IDAHO SENATE; and CHUCK WINDER, in his official capacity as President Pro Tempore of the Senate,

                Intervenor-Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

The United States opposes intervention by Joyce Livestock Co., LU Ranching Co., Pickett Ranch & Sheep Co., and Idaho Farm Bureau Federation because they fail to identify any legally-protectable interest that could be impaired by this action. Indeed, their contention that they hold grazing permits and water rights that may be affected by this suit is wholly unsupportable given that their grazing permits and stockwater rights are not located in the same geographic area or connected in any way to the federal water rights at issue. Moreover, they have failed to demonstrate that the existing parties will not adequately represent their interests. Accordingly, intervention of right should be denied. *See* Fed. R. Civ. P. 24(a).[1]

## I. PROCEDURAL AND FACTUAL BACKGROUND

The United States filed this action on June 2, 2022, challenging Idaho state administrative proceedings – and the underlying state statutes recently enacted by the Idaho legislature authorizing those proceedings[2] – which seek to forfeit federally-held water rights. The United States challenges four orders issued by the Idaho Department of Water Resources ("IDWR") threatening to forfeit 57 federally-held stockwater rights located on four federal land grazing allotments managed by the United States Bureau of Land Management ("BLM") and 11 federally-held stockwater rights located on one federal land grazing allotment managed by the United States Forest Service. First Am. Compl. For Declaratory & Injunctive Relief ¶ 3 ("Compl.") (ECF No. 11). Only federally-owned stockwater rights, located on federal lands

---

[1] As explained in the United States' Notice of Opposition (ECF No. 24), the United States takes no position on permissive intervention as long as such intervention will not unduly delay or prejudice the adjudication of the original parties' rights, including any Litigation Plan, Discovery Plan, and briefing schedule agreed to by the existing parties, and is in the interests of judicial economy. *See* Fed. R. Civ. P. 24(b).

[2] Those state statutes are: Idaho Code §§ 42-113(2)(b), 42-222(2), 42-224, 42-501, 42-502, and 42-504. *See* Compl. ¶¶ 83-110.

within federal grazing allotments, are at issue in this proceeding.  No privately-held water rights are at issue.

On August 30, 2022, Plaintiffs and Defendants filed Joint Litigation and Discovery Plans. (ECF Nos. 16, 17).  The Court subsequently granted the Idaho House of Representatives *et al.*'s Motion to Intervene[3] (ECF No. 23), and the Parties, including those Intervenor-Defendants, filed revised Litigation and Discovery Plans on September 14.  (ECF Nos. 27, 28).  Joyce Livestock, LU Ranching Co., Pickett Ranch & Sheep Co., and Idaho Farm Bureau Federation (collectively the "Movants") moved to intervene on August 30 (ECF No. 19), and the United States filed its Notice of Intent to Oppose such Motion on September 8 (ECF No. 24).

The United States holds thousands of water rights located on federally-owned land in Idaho that have been decreed or licensed by the State and its courts for use by livestock on federal grazing allotments ("stockwater rights").  Compl. ¶ 1; Decl. of Fredric Price ("Price Decl.") ¶ 7; Decl. of Kathryn Conant ("Conant Decl.) ¶¶ 8, 12.  These stockwater rights provide water that is generally available for use by any livestock managed by the holders of permits to graze livestock on the federal lands on which the water rights are located.  Compl. ¶ 1.

None of the Movants filed any of the forfeiture petitions that preceded IDWR's orders. *See* Compl. ¶ 3; Price Decl. ¶ 4; Conant Decl. ¶ 15.  While some of the Movants do own private water rights, all of those rights have a place of use ("POU") located many miles from the federal grazing allotments that are relevant here.  Price Decl. ¶ 6.  Joyce Livestock's closest water right POU is over 65 miles from a federal grazing allotment subject to an IDWR order; LU Ranching's closest POU is more than 70 miles away from such; and Pickett Ranch's closest POU is separated by more than 165 miles.  *Id*.  The Idaho Farm Bureau owns no water rights.  *Id*.

---

[3] The United States took no position on the Idaho Legislature's Motion to Intervene.

### A. The Snake River Basin Adjudication.

Almost all of the 68 federally-held stockwater rights subject to the IDWR orders at issue in this litigation were decreed to the United States by the Idaho Fifth Judicial District Court through a comprehensive water rights adjudication undertaken pursuant to the McCarran Amendment, 43 U.S.C. § 666, known as the Snake River Basin Adjudication ("SRBA"). Compl. ¶ 31; Price Decl. ¶ 7; Conant Decl. ¶ 15(b).[4] The McCarran Amendment waives the sovereign immunity of the United States, allowing it to appear in a state forum, only for the comprehensive adjudication of all rights on a stream system in a state and the subsequent administration of decreed rights. *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 812-13 (1976) (wherein the Supreme Court found the McCarran Amendment only provided a limited waiver of sovereign immunity); *S. Delta Water Agency v. United States*, 767 F.2d 531, 541 (9th Cir. 1985) ("Because there has been no prior adjudication of relative general stream water rights in this case, there can be no suit 'for the administration of such rights' within the meaning of the McCarran Amendment.").

In total, following decades of litigation, the SRBA Court decreed over 158,000 water rights. Compl. ¶ 40; Price Decl. ¶ 7. Included in that total were over 15,000 stockwater rights decreed to the United States for use on federal lands managed by the BLM and nearly 9,000 stockwater rights decreed to the United States for use on federal lands managed by the Forest Service. Compl. ¶ 40; Price Decl. ¶ 7; Conant Decl. ¶ 12. All of these decreed water rights were subject to the comprehensive water adjudication process mandated by Idaho statutes, including

---

[4] Of these 68 federally-held stockwatering rights, four were not the subject of judicial decrees, but were either licensed to the United States pursuant to Idaho law by IDWR (75-7279, 75-7288, and 75-7335), or filed by the United States under I.C. § 42-243 and qualifying for the SRBA *de minimis* stockwater claims deferral option (75-4241). Conant Decl. ¶ 15(b).

investigation of claims by IDWR, the issuance of a Director's Report from IDWR to the SRBA Court providing the Department's recommendation regarding proper resolution of claims, and the opportunity for objection to all claims by any party to the adjudication. *See* Idaho Code Title 42, Ch. 14.

### B.     Settlement and Decree of Federal Stockwater Rights.

Pursuant to this established State adjudication process, many of the decreed stockwater rights now held by the United States were the subject of objections by the State or private parties that were eventually resolved either through settlement agreements, withdrawal of the objections, or both. Price Decl. ¶¶ 9-10. Under Idaho statute, an objection to *any* water right claim in the vast area covered by the SRBA could be filed by any other claimant. I.C. § 42-1412(1) ("Any claimant who desires to object to a water right . . . shall file an objection with the district court within the time specified in the notice of filing of the director's report."). An objector did not need to allege that another's claim would negatively impact the objector's own claims nor did the objector's claims even need to be geographically close to the claim to which it objected. Over 1,400 authorized grazing permittees graze livestock on BLM allotments. Price Decl. ¶ 8. Many BLM grazing permittees did not file claims for stockwater on the federal grazing allotments and relied on the BLM to secure these stockwater rights to cover the water use by all permitted livestock. *Id*. Of approximately 1,020 grazing permit holders on Forest Service lands within the SRBA, only 20 filed stockwater claims. Conant Decl. ¶ 11(d).

Two of the Movants, Pickett Ranch and Joyce Livestock, filed objections to 39 of the federally-held rights subject to the IDWR orders, all located on federal lands managed by the BLM within four federal grazing allotments. Price Decl. ¶ 10.b. Neither Pickett Ranch nor Joyce Livestock had stockwater claims nor grazing permits in any of these allotments. *Id*. ¶ 5.

All of these objections were resolved, with the Movants either entering into settlement agreements with the United States or withdrawing their objections years after filing them. *Id.* ¶ 10.

During this process, the United States, Pickett Ranch, and other parties entered into the most comprehensive stockwater rights settlement in the SRBA's lengthy history. After extensive negotiations facilitated by a retained mediator, this settlement agreement provided for the decree of hundreds of water rights located on federal grazing allotments throughout southern and central Idaho, including many of the federally-held stockwater rights before the Court here. *Id.* ¶ 10.c.. Joyce Livestock withdrew its objections when this settlement agreement was executed. *Id.* ¶ 10.d. The settlement followed letters from a number of BLM permittees to the SRBA court and counsel for Pickett Ranch and other objectors, which requested that the objectors withdraw their objections to BLM's water right claims in areas where the BLM permittees held grazing permits and the objectors did not. Price Decl. ¶ 9.

In their Motion, Movants ignore this history and instead, after several of the Movants fully participated through counsel in the SRBA water rights adjudication and agreed to final resolution of their claims and those held by the United States, now complain that the United States obtained these decrees through "default" and improper "pressure," and that there's something fundamentally improper about the government holding water rights. Def.-Intervenors Mem. in Supp. of Mot. to Intervene ("Mem.") at 2, 3, 5 (ECF No. 19-1).[5] As explained below, Movants have failed to demonstrate the requisite legal and factual basis to support their Motion; their hyperbole, lacking any factual support, should not distract from this failure.

---

[5] Remarkably, Movant Pickett Ranch even complains about terms of its water rights settlement with the United States that were negotiated and agreed to by the same attorney it has retained in this proceeding. Mem. at 7.

## II. ARGUMENT

A motion for intervention of right must meet a four-part test: 1) the motion must be timely;[6] 2) the movant must claim a "significantly protectable" interest relating to the property or transaction that is the subject of the action; 3) the movant must be so "situated that the disposition of the action may as a practical matter impair or impede their ability to protect that interest;" and 4) the movant's "interest must be inadequately represented" by the existing parties to the action. *Cooper v. Newsom*, 13 F.4th 857, 864 (9th Cir. 2021) (citations omitted); *see* Fed. R. Civ. P. 24(a)(2). "It is incumbent on the party seeking to intervene to show that all the requirements for intervention have been met." *Cooper*, 13 F.4th at 865 (quoting *Chamness v. Bowen*, 722 F.3d 1110, 1121 (9th Cir. 2013)). Failure to satisfy any of these requirements is fatal to a motion, and a court need not consider other elements if one is not satisfied. *Id.* (quoting *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009)). The separate parts of the test, however, are "often []very interrelated," and any analysis may "reflect that relationship." *Id.* (quoting Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1908 (3d ed. Supp. 2022 )).

### A. Movants Have Asserted No Significantly Protectable Interest In This Action That Will Suffer Any Practical Impairment.

Movants have not shown that they have any protectable interest at issue in this litigation or impairment of that interest. A protectable interest sufficient to justify intervention as of right is only present where a movant has a legally protectable interest that will suffer a practical impairment in the pending litigation. *Cooper*, 13 F.4th at 865 (quoting *Cal. ex. Rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)). A movant has a significantly protectable interest in an action only if "(1) it asserts an interest that is protected under some law, and (2)

---

[6] The United States is not challenging the timeliness of the Motion.

there is a 'relationship' between its legally protected interest and the plaintiff's claims." *Lockyer*, 450 F.3d at 441 (quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)). Where resolution of the pending litigation will not affect the claimed interest, the required relationship between the claimed interest and the pending litigation does not exist, and intervention as of right must be denied. *Donnelly*, 159 F.3d at 410 (citing *Montana v. United States Envtl. Protection Agency,* 137 F.3d 1135, 1141-42 (9th Cir. 1998)); *Greene v. United States,* 996 F.2d 973, 976-78 (9th Cir.1993)).

Here, Movants have asserted no interest that would be affected by this litigation. They appear to present their federal land grazing permits and stockwater rights as a "protectable interest," but they fail to explain how such interests could be affected by this litigation. Indeed, they fail to explain to the Court that these asserted "protectable interests" are not located in or near the federal land grazing allotments for which they hold grazing permits. *See* Price Decl. ¶¶ 5-6. Similarly, they do not assert any relationship between their stockwater rights and the federal water rights at issue. One of the Movants, the Idaho Farm Bureau, has no water rights at all. *Id.* ¶ 6. For those that do hold private water rights, they do not assert that use or non-use of the federal water rights will affect the availability of water to fulfill their rights in any way or that the federal and private water rights are hydrologically connected such that use of one will impact the other. The required relationship simply does not exist. Although they assert that they need to take part "to defend the water rights they own pursuant to Idaho's law," Mem. at 3, their water rights are simply not at issue in this litigation, and no decision here will affect those rights in any way.

Perhaps recognizing that this legal requirement is lacking, LU Ranching posits that there is a "legal cloud over our property rights," but offers no further explanation. Decl. of Tim Lowry

¶ 16 (ECF No. 19-6).  A perceived "legal cloud" is not the relevant legal standard in the first instance and, in any event, none of LU Ranching's water rights are at issue in this litigation, and none of the federal water rights that are subject to IDWR orders are located near those of LU Ranching.  In short, there is no significantly protectable interest held by LU Ranching or any other Movant that satisfies the necessary requirements for intervention.

Rather than provide the requisite explanation of how this case will practically affect their interests, Movants make generalized assertions that "[t]his case exists only because grazing permittees' interest in their stockwater rights conflicts with existing and potential competing claims by the United States to the same water."  Mem. at 10.  In addition to being patently untrue – this case exists because the State is trying to forfeit federally-held property – Movants fail to describe any such "conflict" with their water rights or how the federal water rights at issue "compete" with their rights.  That is because the federal and private rights are disconnected, and no such conflict exists.

Similarly, Movants broadly assert that the "outcome of this case . . . will make Ranchers' rights easier or more difficult to preserve and/or vindicate."  *Id.*  But this case does not concern any unnamed "Ranchers' rights," and it does not concern any rights possessed by these particular Movants.  And Movants unsupported claim that "[t]his case will determine how, when, and whether competing claims made or decrees held by the United States are evaluated and potentially identified as having been forfeited," *id.*, neglects to recognize that Movants have identified no competing claim or decreed rights they hold that are related to the water rights subject to the IDWR orders at issue here.

The lack of legal support for Movants position is exhibited by their reliance on one inapplicable and unpublished decision of this Court, *Western Watersheds Project v. U.S. Fish*

*and Wildlife Service*, No. 4:CV 10-229-BLW, 2011 WL 2690430 (D. Idaho July 9, 2011). As recognized in Movants' brief, *Western Watersheds*' holding that the ranchers in that case had interests sufficient to justify intervention of right turned on a finding that resolution of the case could force the ranchers "to adopt expensive mitigation measures and [they] could be barred altogether from conducting their activities in certain areas." *Id*. at *2-3. Not only do Movants fail to show significant impacts such as these, they demonstrate no possible impacts at all. Incidental affects and general interests are not sufficient to establish the required significant protected interest. *Cooper*, 13 F.4th at 867. Because Movants have failed to assert any legally protectable interest that will suffer a practical impairment in the pending litigation, their Motion to intervene as of right should be denied.

> **B.** **Movants Have Failed To Demonstrate That Their Interests Are Not Adequately Protected.**

Even if the Movants had a legally protectable interest at stake in this litigation – which they do not – Movants' interests in this case align completely with the named Defendants, as well as the State Legislature Intervenor, and Movants cannot demonstrate that their interests are not adequately protected. For this reason also intervention of right should be denied.

In general, when considering intervention, states are "deemed to represent all its citizens." *Nebraska v. Wyoming*, 515 U.S. 1, 21 (1995) (quoting *Kentucky v. Indiana*, *281 U.S.* 163 (1930)). In considering intervention by private parties in a water rights dispute, the Supreme Court held that a "State is presumed to speak in the bests interests of those citizens." *Id.*; *Gonzalez v. Arizona*, 485 F.3d 1041, 1052 (9th Cir. 2007) ("Where 'the government is acting on behalf of a constituency it represents,' as it is here, this court assumes that the government will adequately represent that constituency." (quoting *Prete v. Bradbury,* 438 F.3d 949, 956 (9th Cir.2006)).

Where, as here, Movants and Defendants share the same interests, "[i]n the absence of a 'very compelling showing to the contrary' it will be presumed that a state adequately represents it citizens." *Lockyer*, 450 F.3d at 443 (quoting *Arakaki v. Cayetano,* 324 F.3d 1078, 1086 (9th Cir. 2003)); *see also Arakaki*, 324 F.3d at 1086 ("When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." (citation omitted)). This principle is particularly robust when government lawyers are defending the constitutionality of legislative enactments. *See Lockyer*, 450 F.3d at 444. To overcome this presumption, movants "must make a 'very compelling showing' that the government will not adequately represent its interest." *Gonzalez*, 485 F.3d at 1052 (citing *Prete,* 438 F.3d at 1086).

In determining whether a movant sustained its burden, a court should "consider several factors, including whether the [Defendants] will undoubtedly make all of the intervenor's arguments, whether the [Defendant] is capable of and willing to make such arguments, and whether the intervenor offers a necessary element to the proceedings that would be neglected." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983). Where the validity of legislative enactments is at issue, "[i]n order to make a 'very compelling showing' of the government's inadequacy, the proposed intervenor must demonstrate a likelihood that the government will abandon or concede a potentially meritorious reading of the statute." *Lockyer*, 450 F.3d at 444.

Movants have not, and cannot, satisfy any of these factors. They make no showing that they bring any necessary element to this litigation and do not allege that Defendants are not capable of and willing to make any particular argument. That is understandable, given that Defendants (and Intervenor) have an obvious interest in vigorously defending the IDWR

administrative proceedings and the state statutes at issue here.  Instead of providing the required showing, Movants present the Court with only generalized speculation.  *E.g.,* Mem. at 11 ("The interests of government and the private sector may diverge." (citations omitted)).

In a comment particularly apt here, the Advisory Committee on Civil Rules explained the importance of requiring a showing of inadequate representation to protect against "'a cluttering of lawsuits with multitudinous useless intervenors.'"  Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1909 (3d ed. Supp. 2022) (quoting Advisory Committee Reporter).  Movants have nothing to add here, and their Motion should be denied.

### III. CONCLUSION

Movants have not shown that they have any legally protectable interest that will suffer a practical impairment in this litigation.  Nor have they shown that their interests are not adequately represented by Defendants and Intervenors.  Because both showings are necessary, intervention as of right should be denied.

Respectively submitted this 7th day of October, 2022.

                JOSHUA D. HURWIT
                United States Attorney
                CHRISTINE ENGLAND
                Assistant United States Attorney

                TODD KIM
                Assistant Attorney General
                U.S. Department of Justice
                STEPHEN G. BARTELL
                Assistant Section Chief
                THOMAS K. SNODGRASS
                Senior Attorney

                */s/  David L. Negri*
                DAVID L. NEGRI
                Trial Attorney

                *Counsel for Plaintiff*