RAÚL R. LABRADOR
Attorney General
JOY M. VEGA, ISB #7887
MICHAEL C. ORR, ISB # 6720
Deputy Attorneys General
700 W. State Street, 2nd Floor
P.O. Box 83720
Boise, Idaho 83720-0010
Telephone: 208-334-2400
Facsimile: 208-854-8072
joy.vega@ag.idaho.gov
michael.orr@ag.idaho.gov

*Attorneys for Defendants the State of Idaho, the Idaho Department of Water Resources, and Gary Spackman, in his official capacity as Director of the Idaho Department of Water Resources*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>The STATE OF IDAHO; the IDAHO DEPARTMENT OF WATER RESOURCES; and GARY SPACKMAN, in his official capacity as the Director of the Idaho Department of Water Resources,<br><br>    Defendants,<br><br>v.<br><br>IDAHO HOUSE OF REPRESENTATIVES; MIKE MOYLE, in his official capacity as Majority Leader of the House; IDAHO SENATE; and CHUCK WINDER, in his official capacity as President Pro Tempore of the Senate,<br><br>    Intervenor-Defendants. | Case No. 1:22-cv-00236-DCN<br><br>**STATE DEFENDANTS' RESPONSE TO MOTION OF THE SHOSHONE-BANNOCK TRIBES FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Dkt. 38]** |

Defendants the State of Idaho, the Idaho Department of Water Resources, and Gary Spackman, in his official capacity as Director of the Idaho Department of Water Resources ("State Defendants"), by and through their counsel of record and pursuant to Local Rule 7.1(c) of this Court, hereby submit their response in opposition to the *Motion of the Shoshone-Bannock Tribes for Leave to File Amicus Curiae Brief in Support of the Plaintiff's Motion for Summary Judgment* (Dec. 22, 2022) (Dkt. 38) (*"Motion"*).

The State Defendants request that this Court either deny the *Motion* or expressly limit the scope of the Shoshone-Bannock Tribes' participation in this case, to prevent enlargement of the issues and claims for relief beyond those asserted by the Plaintiff. These matters are discussed more fully below. In this response, the State Defendants only address the *Motion* without intending to concede any factual or legal matter asserted in the proposed amicus brief (Dkt. 38-1) filed by the Shoshone-Bannock Tribes ("the Tribes"). The State Defendants reserve their right to respond to any and all factual and legal matters raised or asserted in the Tribes' proposed amicus brief, including by submitting the State Defendants' positions, arguments, and evidence regarding such matters.

## ARGUMENT

### I. Legal Standards.

A federal district court "has broad discretion to appoint amici curiae." *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). Federal district courts often refer to Rule 29 of the Federal Rules of Appellate Procedure for guidance in determining whether to grant an amicus motion. *Dible v. City of Chandler*, 2004 WL 7336848, at *1 (D. Ariz. Dec. 23, 2004). Under this rule, the amicus motion

should state "the movant's interest" and "the reason why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case." F.R.A.P. 29(a)(3).

The "classic role" of amici is threefold: (1) to assist in a case of general public interest; (2) to supplement the efforts of counsel; and (3) to draw the court's attention to law that has escaped consideration. *Miller-Wohl Co. v. Comm'r of Labor & Indus., State of Montana*, 694 F.2d 203, 204 (9th Cir. 1982). "An amicus curiae is not a party to litigation," however. *Id.* Amicus "must take the case as he finds it," and "can neither take over the management of the case nor take an appeal therefrom." *Raiser v. Kleeger*, 2022 WL 2903133, at *1 (C.D. Cal. Apr. 7, 2022). Further, an amicus "is not to act like a plaintiff and bring additional causes of action" into the case. *WildEarth Guardians v. Jeffries*, 370 F. Supp. 3d 1208, 1228 n.2 (D. Or. 2019); *see also Kingdom v. Biden*, 2021 WL 4956507, at *1 (D. Hawai'i Sept. 30, 2021) ("the amicus may not assume the functions of a party and may not initiate, create, extend, or enlarge the issues").

## II. The Fort Hall Agreement Does Not Provide the Tribes With an Interest in This Case or a Unique Perspective on the Issues.

The *Motion* asserts that the Fort Hall Agreement and the Consent Decree issued pursuant to it in Idaho's Snake River Basin Adjudication ("SRBA") give the Tribes "an express interest in, and perspective relating to, this litigation that is valuable for the Court to consider." Dkt. 38 at 3.[1] The *Motion* asserts the Idaho statutes at issue in this case—and specifically Idaho Code §

---

[1] Page citations are to the ECF-generated page number. The formal title of the Fort Hall Agreement is "The 1990 Fort Hall Indian Water Rights Agreement." Dkt. 38-3 at 2. The "Consent Decree" issued pursuant to the Fort Hall Agreement is entitled the *Revised Partial Final Consent Decree Determining the Rights of the Shoshone-Bannock Tribes to the Use of Water in the Upper Snake River Basin*, which was entered in the SRBA on August 13, 2014, and is included in "Attachment 4" to the SRBA's *Final Unified Decree.* http://www.srba.state.id.us/Images/federal/shoban%20consent%20decree.pdf. It appears that the Tribes' citations to particular pages within the Consent Decree actually point to pages in the

42-224—seek "to unwind or reverse" water rights that were decreed in the SRBA pursuant to various water rights settlement agreements, "including the [Fort Hall Agreement] and the Consent Decree." Dkt. 38 at 3.

The Tribes' proposed amicus brief contradicts this assertion. In the brief, the Tribes admit they are not aware of any attempt to apply the statutes to any Tribal water rights. Dkt. 38-1 at 9. The Tribes also admit that <u>none</u> of the Tribal water rights decreed pursuant to the Fort Hall Agreement fall within the scope of Idaho Code § 42-224, the Idaho statute challenged by the United States as unconstitutionally targeting federally-owned stockwater rights for forfeiture. Dkt. 38-1 at 10. The plain language of the statute confirms that it only applies to stockwater rights, and that it does not apply to stockwater rights that are based on federal law. *Id.*; Idaho Code § 42-224(14). All but two of the Tribal water rights decreed pursuant to the Fort Hall Agreement are federal reserved water rights decreed pursuant to the *Winters* doctrine,[2] and the two exceptions are not stockwater rights. Dkt. 38-1 at 10 & n.6. The Tribes' admissions and the plain language of Idaho Code § 42-224 thus contradict the Tribes' assertion that the Fort Hall Agreement provides them with an interest in, or "valuable" perspective on, the issues in this case. Dkt. 38 at 3.[3]

Perhaps recognizing this, the Tribes rely on hypotheticals to buttress their assertion of "an

---

previous version of the Consent Decree, which was entered in SRBA Subcase No. 00-92022 on August 2, 1995. http://164.165.134.61/S0092022XX.HTM.

[2] *United States v. Winters*, 207 U.S. 564 (1908).

[3] The three stockwater rights cited by the Tribes as being decreed pursuant to the Fort Hall Agreement are not Tribal water rights but rather water rights held by the United States, as the Tribes admit. Dkt. 38-1 at 11 & n.7. The Tribes have not asserted that they have uniquely helpful information or insight with respect to these three water rights, or that the United States is unable or unwilling to provide this Court with any such information and insight, if necessary.

express interest in, and perspective relating to," this case. Dkt. 38 at 3. The Tribes imply that Idaho Code § 42-224 might be amended in the future to apply to water rights for irrigation and other uses, or to federal reserved water rights, because "<u>currently</u> [it] applies only to stockwater rights obtained pursuant to the substantive law of the state (i.e., state-based rights)." Dkt. 38-1 at 10 (underlining added). The Tribes thus point to the "potential" for Idaho Code § 42-224 to be applied in the future to water rights decreed pursuant to the Fort Hall Agreement. *See, e.g.,* Dkt. 38-1 at 10 ("potentially being applicable"); *id.* at 11 ("have the potential to be affected"); *id.* at 24 ("any potential application"); *id.* at 25 ("has the potential to be applied"). Such speculation adds to or enlarges the issues, and litigating hypotheticals in this case would not be helpful to this Court or the parties.[4]

In short, the Tribes' assertions of a "valuable" interest and perspective, Dkt. 38 at 3, are based on an agreement and water rights that are not at issue in this case. Further, it is undisputed that all but two of the Tribal water rights decreed pursuant to the Fort Hall Agreement are federal reserved water rights and therefore not subject to forfeiture under Idaho law. The two exceptions are not stockwater rights and fall outside the plain language of Idaho Code § 42-224, which only applies to stockwater rights perfected under Idaho law. Dkt. 38-1 at 10; Idaho Code § 42-224(14). These two water rights would fall under Idaho Code § 42-224 only if it was amended in the future to apply to water rights for irrigation storage. Dkt. 38-1 at 10 n.6. Nothing in the record supports

---

[4] The implied assertion that Idaho Code § 42-224 could be amended in the future to apply to water rights decreed pursuant to federal law ignores the plain language of the SRBA's *Final Unified Decree*. The *Final Unified Decree* expressly provides that "State law regarding forfeiture does not apply to partial decrees based on federal law." Dkt. 13 at 127. Federal law also precludes forfeiture of federal reserved water rights pursuant to state law. *See, e.g., Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1155 (9th Cir. 2017) ("*Winters* rights, unlike water rights gained through prior appropriation, are not lost through non-use.").

such speculation. The Tribes have not shown that they have an interest or perspective that would be "valuable" for this Court to consider in this case. Dkt. 38 at 3.

### III. Granting the *Motion* Would Impermissibly Enlarge the Issues and Claims for Relief in This Case.

The Tribes' proposed amicus brief also suggests that they do not seek amicus status simply to provide this Court with information or perspectives the Tribes may have on the issues. Rather, it appears the Tribes seek to actively participate in this case by raising new issues and claims, and to seek rulings from this Court regarding any future application of the statutes to the water rights decreed in the SRBA pursuant to the Fort Hall Agreement. The Tribes' proposed amicus brief asserts that "Idaho's Statutory Scheme Constitutes an Impermissible Taking Under the United States and Idaho Constitutions." Dkt. 38-1 at 23. This is an entirely new claim for relief. The United States specifically identified five claims for relief in its First Amended Complaint and summary judgment filings: these claims for relief do not include a "takings" claim under the United States Constitution or the Idaho Constitution. Dkt. 11 at 26-29; Dkt. 34 at 3; Dkt. 34-1 at 3-4, 24-46.[5] Thus, allowing the Tribes to assert their "takings" arguments and claims would necessarily enlarge the issues and claims for relief in this case.

The Tribes' proposed amicus brief also states, after expressly referring to the Fort Hall Agreement, it is "imperative" for the Court to "make clear" to the State of Idaho "that legislative attempts to unwind such settlement agreements are unlawful." Dkt. 38-1 at 9. The Tribes assert that "[s]uch a ruling is necessary to avoid any attempt to apply these statutes to the Tribes or any

---

[5] The United States' five claims for relief are: (1) Sovereign Immunity; (2) discrimination against the United States in violation of the Intergovernmental Immunity Doctrine and the Supremacy Clause of the United States Constitution; (3) violations of the Property Clause of the United States Constitution; (4) violations of the Contract Clause of the United States Constitution; and (5) violations of the Retroactivity Clause of the Idaho Constitution. *Id.*

attempt to adopt such statutes that might impact Tribal water rights settled under the [Fort Hall Agreement] and contained within the Consent Decree." *Id.* (underlining added). The Tribes thus appear to seek an affirmative "ruling" that any future application of Idaho Code § 42-224 to the water rights decreed pursuant to the Fort Hall Agreement would be unconstitutional, and that any other "such statutes" that might be adopted in the future would also be invalid as applied to the Fort Hall Agreement water rights.

Other assertions in the Tribes' proposed amicus brief also suggest the Tribes seek specific rulings from this Court regarding the potential for future application of the challenged Idaho statutes to the water rights decreed pursuant to the Fort Hall Agreement, or at least seek to litigate such hypotheticals. The Tribes assert that "any attempts by the State of Idaho to apply this statutory scheme to the water rights contained within the Consent Decree are unconstitutional as applied." Dkt. 38-1 at 11. The Tribes further assert they "have a clear interest in ensuring that the Court, and the State of Idaho, understand that any attempts to apply the State's stockwater statutory scheme to Tribal water rights," as well as "any future unilateral legislative attempts to unwind or alter water rights contained in the [Fort Hall Agreement] and Consent Decree, are prohibited by law." *Id.*; *see also* Dkt. 38-1 at 24 ("any future attempts by the state legislature to similarly alter Tribal water rights, storage rights, or United States water rights contained within the Consent Decree or [Fort Hall Agreement], would result in significant adverse impacts to bargained-for settlement of its water rights."); Dkt. 38-1 at 25 ("any attempt by the State to apply its statutory stockwater scheme to water rights contained within the Consent Decree must be held to be unconstitutional as applied.").

Injecting hypotheticals regarding the Fort Hall Agreement and Consent Decree into this case and seeking substantive rulings on the hypothetical scenarios would unavoidably enlarge the

issues and claims before this Court. The United States' First Amended Complaint and summary judgment filings made no claims or arguments based on the Fort Hall Agreement or the Consent Decree.

The Tribes' proposed amicus brief thus demonstrates they do not intend to take this case as they found it, *see Raiser*, 2022 WL 2903133, at *1 (stating that amicus "must take the case as he finds it" and may not "take over the management of the case"), but rather intend to assert new claims for relief and seek affirmative rulings on hypothetical issues that are outside the scope of this case. *See WildEarth Guardians*, 370 F. Supp. 3d at 1228 n.2 (stating that amicus "is not to act like a plaintiff and bring additional causes of action"); *Kingdom*, 2021 WL 4956507, at *1 ("the amicus may not assume the functions of a party and may not initiate, create, extend, or enlarge the issues"). As a potential amicus, the Tribes may not enlarge the scope of this case.

## CONCLUSION

Granting the *Motion* would not assist this Court in resolving the issues presented in this case. To the contrary, granting the *Motion* in its entirety would allow the Tribes to enlarge the issues and claims for relief in this case, and to advocate for affirmative relief with respect to their hypothetical claims regarding the Fort Hall Agreement and Consent Decree. The Tribes would not simply be friends of the Court, but would have "party" or *quasi*-party status. *See Miller-Wohl Co.*, 694 F.2d at 204 ("An amicus curiae is not a party to litigation").

The State Defendants therefore respectfully request that this Court deny the *Motion*, or at most only grant the *Motion* with such conditions or limitations so as to prevent the risk of enlargement of the issues and claims for relief discussed herein.

/ / /

/ / /

Respectfully submitted this 10th day of January, 2023.

                                                    /s/ *Michael C. Orr*
                                                    MICHAEL C. ORR
                                                    Deputy Attorney General
                                                    Energy and Natural Resources Division
                                                    Office of the Attorney General
                                                    State of Idaho