UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF IDAHO; IDAHO DEPARTMENT OF WATER RESOURCES; GARY SPACKMAN, *in his official capacity as Director of the Idaho Department of Water Resources*,<br><br>Defendants,<br><br>v.<br><br>IDAHO HOUSE OF REPRESENATIVES; IDAHO SENATE; CHUCK WINDER, *in his official capacity as President Pro Tempore of the Senate*; MIKE MOYLE, *in his official capacity as Majority Leader of the House*,<br><br>Intervenor Defendants. | Case No. 1:22-cv-00236-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is a Motion to Intervene filed by Joyce Livestock Co., LU Ranching Co., Pickett Ranch & Sheep Co., and the Idaho Farm Bureau (collectively "Ranchers"). Dkt. 19. The already existing Intervenor Defendants do not oppose the Motion, and Defendant State of Idaho has not taken a position. Dkt. 23, at 2. The United States filed a response opposing the Motion (Dkt. 30), to which the Ranchers replied (Dkt. 31).

MEMORANDUM DECISION AND ORDER - 1

Having reviewed the briefing, the Court finds that the facts and legal arguments are adequately presented and that oral argument would not significantly aid its decisional process. Thus, the Court will decide the Motion on the briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

For the reasons stated below, the Court GRANTS in PART and DENIES in PART the Ranchers' Motion to Intervene.

## II. BACKGROUND

This case concerns an age-old conflict in the west that Barry Goldwater is thought to have described as one "over three things: water, women and gold, and usually in that order."[1] True to that sentiment, on June 6, 2022, the United States sued the State of Idaho to challenge the constitutionality of a series of Idaho statutes affecting the Government's stockwater rights. Dkt. 1.

Through the multi-decade Snake River Basin Adjudication ("SRBA"), the United States received thousands of water rights for the beneficial use of watering livestock on federal lands. Dkt. 12-1, at 6. And in 2007, the Idaho Supreme Court ruled in favor of federal grazing permittees[2] that objected to the United States' stockwater claims. *See Joyce Livestock Co. v. United States*, 156 P.3d 502 (2007). About ten years later, the Idaho Legislature revised the Idaho Code to clarify and refine the stockwater laws in light of *Joyce Livestock*. The statutes at issue establish a procedure for the forfeiture of existing

---

[1] Melissa Ferry, *First in Time, First in Right*, Oregon State University (Summer 2013), https://smallfarms.oregonstate.edu/smallfarms/first-time-first-right (quoting Barry Goldwater).

[2] Some of the Rancher Intervenor-Applicants in the present case were involved in *Joyce*.

MEMORANDUM DECISION AND ORDER - 2

stockwater rights. *See* Idaho Code § 42-222(2).

In May and June of 2022, under the new statutory framework, Idaho issued two administrative orders requiring the United States to show why sixty-eight of their stockwater rights should not be forfeited for non-use. Based on the new statutory scheme, Idaho must pursue a procedure that might end in a civil action in state court seeking such forfeiture. Following these orders, the United States has brought the present suit against the State of Idaho challenging the constitutionality of the stockwater statutes.

The suit was initially assigned to Magistrate Judge Debora K. Grasham but has since been reassigned to the undersigned because not all parties consented to a magistrate judge presiding over the case. Before reassignment, the State of Idaho filed an answer to the original complaint. Dkt. 9. The United States then filed an amended complaint on July 15, 2022 (Dkt. 11), to which the State answered on July 29, 2022 (Dkt. 13). Three days after the amended complaint was filed, the Idaho Senate and House of Representatives ("Legislature") filed a motion to intervene. Dkt. 12. None of the then-existing parties objected, and the Court granted that motion. Dkt. 23.

In the interim between the Legislature's motion and the Court's decision on the same, the Ranchers also filed the pending Motion to Intervene. Dkt. 19. In its order granting the Legislature's motion to intervene, the Court noted that it preliminarily found the Ranchers' Motion timely and that they had significant protectable interests not adequately represented by the other parties. Dkt. 23, at 2. Because the response time had not elapsed, however, the Court ordered the existing parties to indicate their position, and if opposition arose, that formal briefing would ensue. *Id.*

MEMORANDUM DECISION AND ORDER - 3

Shortly thereafter the United States indicated its opposition and later filed formal briefing, leading to this point.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 24 authorizes intervention as of right or permissive intervention.

Rule 24(a) contains the standards for intervention as of right. It provides that a court must permit anyone to intervene who, on timely motion: "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

The Ninth Circuit distilled this provision into a four-part test for intervention as of right: (1) the application for intervention must be timely; (2) the applicant must have a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must be inadequately represented by existing parties in the lawsuit. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001) (cleaned up).

The Court must construe Rule 24(a)(2) liberally in favor of intervention. *Id.* at 818. In assessing interventions, courts are "guided primarily by practical and equitable considerations." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003) (cleaned up). However, it is the movant's burden to show that it satisfies each of the four criteria for

MEMORANDUM DECISION AND ORDER - 4

intervention as of right. *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006). Failure to satisfy any of these requirements is fatal to a motion, and a court need not consider other elements if one is not satisfied. *Cooper v. Newsom*, 13 F.4th 857, 864 (9th Cir. 2021). The separate parts of the test, however, are "often []very interrelated," and any analysis may "reflect that relationship." *Id.* (quoting Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1908 (3d ed. Supp. 2022)).

In general, Rule 24(b) also gives the court discretion to allow permissive intervention to anyone who has a claim or defense that shares with the main action a common question of law or fact. Fed. R. Civ. P. 24(b)(1)(B). In addition, in exercising its discretion under Rule 24(b), the Court must consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights. Fed. R. Civ. P. 24(b)(3).

## IV. DISCUSSION

The United States objects to the Ranchers intervening as of right,[3] but it has taken no position on permissive intervention. The Court will address each in turn.

### A. Mandatory Intervention

The effect of mandatory intervention is self-evident. If a party meets the requirements for mandatory intervention, the Court must let that party intervene. As explained below, the Court finds that although the Ranchers have met most of the requirements, they have not met their burden of showing that the existing parties do not adequately represent their interests.

---

[3] Also referred to as mandatory intervention.

*1. Timely*

It is without dispute that the Ranchers' Motion was timely. The Court reaffirms its previous finding of the same. Dkt. 23, at 3. The Ranchers have provisionally participated in preparing the joint litigation and discovery plan and have already filed their proposed answer to the First Amended Complaint. Dkt. 19-2. The Motion was filed during the early stage of the proceedings, will not prejudice the parties, and will not cause delay. *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996), *as amended on denial of reh'g* (May 30, 1996). For this reason, the Court finds that the Motion is timely.

*2. Significant Protectable Interests That Will Be Impaired*[4]

Much of the United States' concern centers on its argument that the Ranchers have not asserted a significant protectable interest in the action that will suffer any practical impairment. In its September 2, 2022 Order, the Court preliminarily found that the Ranchers had significant protectable interests. Dkt. 23, at 2. And now, with the aid of full briefing, the Court reaches the same conclusion.

A prospective intervenor "has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *Wilderness Society v. U.S. Forest Service*, 630 F.3d 1173, 1179 (9th Cir. 2011).

The Ranchers hold permits to graze their livestock on federal land and associated stockwater rights.[5] Dkt. 19, at 10. They argue that the outcome of this case will make

---

[4] The significantly protectable interest requirement is closely linked with the impairment requirement, so the Court addresses them at the same time.

[5] The Idaho Farm Bureau Federation does not directly hold any rights, but its members do. Dkt. 19, at 10.

MEMORANDUM DECISION AND ORDER - 6

Ranchers' "rights either easier or more difficult to preserve and/or vindicate." *Id.* They further assert that "this case will determine how, when, and whether competing claims made or decrees held by the United States are evaluated and potentially identified as having been forfeited." *Id.* The United States paints a different picture.

The United States deploys its opposition on two fronts. First, it argues that the Ranchers have failed to explain how their federal land grazing permits and stockwater rights could be affected by this litigation, specifically because the rights directly at issue are not located in or near the federal land grazing allotments for which they hold grazing permits. Dkt. 30, at 9. Second, the Government argues that the Ranchers "do not assert any relationship between their stockwater rights and the federal water rights at issue." *Id.* In support of this, it argues that the Idaho Farm Bureau has no water rights at all and the other Movants' water rights are not hydrologically connected to the federal rights at issue. Thus, the United States contends that no decision here will affect the Ranchers' rights in any way because they are simply not connected. *Id.*

The United States suggests that this case is only about sixty-eight water rights listed in the May and June 2022 Orders. *See* Dkt. 30, at 10 ("Movants have identified no competing claim or decreed rights they hold that are related to the water rights subject to the IDWR orders at issue here."). If so, the United States reaffirms that the Court's decision would not affect the Ranchers' stockwater rights. The Ranchers agree that if this case were limited to only those orders, the United States' analysis would be responsive. Dkt. 31, at 2. Pointing to the First Amended Complaint, however, they argue that it is not. *Id.*

In the First Amended Complaint, the United States does indeed assert that the

MEMORANDUM DECISION AND ORDER - 7

enforcement of the state statutes at issue would divest sixty-eight water rights it currently owns. Dkt. 11, ¶ 23. But that's not all. The United States also complains that the statutes would divest it of "any federally owned water rights listed in similar successor orders." *Id.* Thus, as the Ranchers correctly note, the scope of this case goes well beyond the sixty-eight water rights mentioned in the 2022 IDWR orders. *See* Dkt. 31, at 3–4 (listing four things the Complaint establishes that support the Ranchers' position). Instead, the outcome of this case could ultimately affect the thousands of water rights possessed by the United States. *See* Dkt. 30-1, at 5–6. And given the fact that the Ranchers are federal grazing permittees, their interests will be affected—for good or ill—by the outcome of this case. For these reasons, the Court finds that the Ranchers have a protectable interest that will be impacted by this case.

*3. Adequate Representation by Existing Parties*

The remaining factor for the Court to consider is whether the Ranchers are adequately represented by the existing parties. In its September 2, 2022 Order, the Court preliminarily found that the Ranchers' interests were not adequately represented by the State of Idaho or the Legislature. Dkt. 23, at 2. Now having the benefit of full briefing and a more thorough examination of caselaw, the Court reaches the opposite conclusion.

A proposed intervenor's burden to show inadequate representation is minimal and satisfied if they can demonstrate that existing parties' representation of their interests may be inadequate. *Arakaki*, 324 F.3d at 1086 (cleaned up). The Ninth Circuit has enunciated three factors in determining the adequacy of representation: (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's

arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect. *Id.*

Ultimately, the most important consideration is how the proposed intervenor's "interest compares with the interests of existing parties." *Id.* (citing 7C Wright & Miller, Fed. Prac. & Proc. Civ. § 1909, at 318 (1986)). When an existing party and a proposed intervenor share the same ultimate objective, a presumption of adequacy of representation applies. *Id*. There is also an assumption of adequacy where, as here, the government is acting on behalf of a constituency that it represents. *United States v. City of Los Angeles*, 288 F.3d 391, 401 (9th Cir. 2002). In the absence of a "very compelling showing to the contrary, it will be presumed that a state adequately represents its citizens when the applicant shares the same interest." *Arakaki*, 324 F.3d at 1086 (citing 7C Wright & Miller, § 1909, at 332). Where parties share the same ultimate objective, differences in litigation strategy do not normally justify intervention. *City of Los Angeles*, 288 F.3d at 402.

Here, the Ranchers concede that they share the same ultimate objective as the State of Idaho. Dkt. 19-1, at 11. So, despite their individual interests in the instant litigation, it is clear that the ultimate objective of the Ranchers and Defendants is to defend the Idaho statute's constitutionality. Given this shared objective, the presumption of adequacy of representation applies, and the Ranchers must make a very compelling showing to defeat this presumption. *Arakaki*, 324 F.3d at 1086.

The Ranchers argue that even though they share the same ultimate objective, the State of Idaho's range of considerations is broader than the profit-motives animating

MEMORANDUM DECISION AND ORDER - 9

private parties. Dkt. 19-1, at 11 (citing *Berg*, 268 F.3d at 823). But this falls short of what is required.

In order to make a showing of the Defendants' inadequacy, the Ranchers "must demonstrate a likelihood that the government will abandon or concede a potentially meritorious reading of the statute." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 444 (9th Cir. 2006). The Ranchers have not. The presumption of adequate representation is not overcome.

In similar cases before this Court and the Ninth Circuit, where intervention as a right was determined despite the ultimate objective being the same, the existing parties signaled that they would abandon or concede meritorious constructions of the contested statutes. *See, e.g.*, *Hecox v. Little*, 479 F. Supp. 3d 930, 955 (D. Idaho 2020), *aff'd*, 2023 WL 1097255 (9th Cir. Jan. 30, 2023); *Lockyer*, 450 F.3d at 444. But, at present, this is not the case. Response briefing to the Government's Motion for Summary Judgment hasn't even been filed and will not be anytime soon.[6] Thus, based on the current briefing, the Court cannot know whether or not some of the arguments for a robust reading of the statute will be conceded.

Consequently, the Court cannot find that the State and Legislature do not adequately represent the Ranchers, at least at this time. The Ranchers, therefore, cannot intervene as of right.

---

[6] The State's cross-motion and response brief are due on March 17, 2023, and the Legislature's cross-motion and brief are due on April 17, 2023. Dkt. 32, at 2. The entire briefing schedule will not even conclude until September 22, 2023. *Id.*

### B. Permissive Intervention

Notwithstanding the Ranchers' failure to intervene as of right, the Court has broad direction to grant or deny permissive intervention. *Cameron v. EMW Women's Surgical Center, P.S.C.*, 142 S. Ct. 1002, 1011 (2022) ("Resolution of a motion for permissive intervention is committed to the discretion of the court before which intervention is sought."); *see also Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977) (cleaned up). What's more, the United States has not opposed permissive intervention, as long as the elements are met.

In the Ninth Circuit, "permissive intervention requires: (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011) (cleaned up). "In exercising its discretion," the Court must also "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

As already indicated, the Ranchers made a timely motion, and the Court finds that they have an independent ground for jurisdiction and a common question of law and fact between their claims and defenses and the main action. What's more, given that they have provisionally participated in the scheduling conference, the Court finds that intervention will not unduly delay or prejudice the adjudication of the existing parties' rights.

For these reasons, the Court finds that the Ranchers can permissively intervene under Rule 24(b).

## V. CONCLUSION

The Court is cognizant of the high stakes involved in this case for the parties and the Ranchers, for the West "is the land where life is written in water,"[7] and "water is for fighting."[8] *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1162 (9th Cir. 2007). Although the Ranchers may not intervene as of right, under Rule 24(b), they can join this fight.

## VI. ORDER

The Court HEREBY ORDERS:

1. The Ranchers' Motion to Intervene (Dkt. 19) is GRANTED in PART and DENIED in PART as outlined above.

DATED: March 13, 2023

David C. Nye
Chief U.S. District Court Judge

---

[7] Quoting Colorado Poet Laureate Thomas H. Ferril.

[8] Quoting a statement attributed to Mark Twain.