UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br><br>STATE OF IDAHO; IDAHO DEPARTMENT OF WATER RESOURES; GARY SPACKMAN, in his official capacity as Director of the Idaho Department of Water Resources,<br><br>        Defendants,<br><br>v.<br><br>IDAHO HOUSE OF REPRESENTATIVES; IDAHO SENATE; CHUCK WINDER, in his official capacity as President Pro Tempore of the Senate; MIKE MOYLE, in his official capacity as Majority Leader of the House,<br><br>        Intervenor Defendants,<br><br>v.<br><br>JOYCE LIVESTOCK CO.; LU RANCHING CO.; PICKETT RANCH & SHEEP CO.; IDAHO FARM BUREAU FEDERATION,<br> Intervenor Defendants.<br>        Defendants. | Case No. 1:22-cv-00236-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

    This case is about water rights the federal government owns in the state of Idaho. The

federal government challenges certain Idaho statutes as unconstitutionally interfering with their water rights. Two of the challenged statutes are procedural and apply to all water rights holders: one establishes that unused rights are forfeited after five years of non-use; the other sets forth the procedures that must be followed to initiate divestment proceedings for unused rights. The remaining statutes place new restrictions on federally-owned (and only federally-owned) stockwater rights by prohibiting changes to their purpose and place of use, imposing a livestock ownership requirement, and altering the appurtenancy of rights used by federal permittees. The state of Idaho, the Idaho legislature, and Idaho ranchers contend the statutes are a constitutional. Today, the Court finds the Idaho parties are right about the procedural statutes: they are constitutional. It also finds the United States is right about the remaining statutes: they impermissibly single out the federal government and its agencies for disfavored treatment, and are therefore unconstitutional.

## I.  INTRODUCTION

Before the Court are four cross-Motions for Summary Judgment filed by each of the parties in this case: Plaintiff United States; Defendants the State of Idaho, the Idaho Department of Water Resources ("IDWR"), and IDWR director Gary Spackman (collectively, the "State Defendants"); Intervenor-Defendants the Idaho House of Representatives, House Majority Leader Mike Moyle, the Idaho Senate, and Senate President Pro Tempore Chuck Winder[1] (collectively, the "Legislature"); and Intervenor-

---

[1] State officials Gary Spackman, Mike Moyle, and Chuck Winder are all sued in their official capacities.

Defendants Joyce Livestock Co., LU Ranching Co., Pickett Ranch and Sheep Co., and Idaho Farm Bureau Foundation (collectively, the "Ranchers"). Dkts. 34, 43, 53, 56.

The Court heard oral argument on the four Motions for Summary Judgment on January 23, 2024. For the reasons outlined below, the Court GRANTS in PART and DENIES in PART each party's summary judgment motion.

Also before the Court is the State Defendants' Motion for Leave to File a Response. Dkt. 75. The Court also DISMISSES the State Defendants' Motion for Leave to File a Response as MOOT.[2]

## II. BACKGROUND

### A. Historic Water Rights in Idaho

In most of the western United States, water rights are allocated according to the prior appropriation doctrine. This doctrine awards water rights to users who apply water toward a "beneficial use," as defined by state law. Generally, priority for these rights is established in the order of appropriation; put another way, western states follow a "first in time, first in right" approach in determining priority of beneficial use water rights. *See e.g., Pyramid Lake Paiute Tribe of Indians v. Nevada*, 724 F.3d 1181, 1185 n.5 (9th Cir. 2013) ("Under the Western water law maxim of 'first in time, first in right," landowners who secure water rights earlier in time . . . are entitled to take their share of water in times of scarcity before those with later-secured 'junior' rights.") (cleaned up).

---

[2] This Motion was filed subsequent to the filing of supplemental briefing requested by the Court after oral argument on the summary judgment motions. However, because the Court resolves the State Defendants' concerns in its discussion of their Motion for Summary Judgment below, the Court finds the Motion for Leave MOOT.

In Idaho, two processes were historically available for establishing rights to surface and groundwater. Prior to 1971, surface water rights could be established via the constitutional method or the statutory method. Constitutional water rights (also called historic use or beneficial use rights) were established by: (1) diverting the water,[3] and (2) applying it to beneficial use, such as irrigation, stockwatering, recreation, or domestic use. Statutory water rights were established by complying with the procedures set forth by statute, involving a formal application, permitting, and licensing process. Prior to 1963, the methods available for establishing ground water rights were essentially the same as those for surface water rights: diversion plus beneficial use, or compliance with the statutory scheme.

Since 1963 for ground water, and 1971 for surface water, rights may only be established via compliance with the statutory application process.[4] However, Idaho still recognizes constitutional water rights obtained prior to 1963 (for ground water) and prior to 1971 (for surface water) under the previous methodology.

In addition to state-based water rights, the federal government and its agencies may assert federal reserved water rights to unappropriated water necessary to achieve the purposes of federal lands. *Cappaert v. United States*, 426 U.S. 128, 141 (1976). In other words, when the federal government sets aside lands for a particular purpose, it can also set aside adequate water to support that purpose. Unlike water rights based on state law,

---

[3] The diversion element was not required for instream stockwater rights. Additionally, IDWR could authorize "instream flow rights" without a diversion, usually for purposes like protecting a lake, preserving a water source for recreation or natural beauty, or providing livestock watering.

[4] Although immaterial to the matter before the it today, the Court notes that a limited exception allows for establishment of beneficial use rights for domestic purposes.

federal reserved water rights are not based on beneficial use. Thus, while state-based beneficial use rights holders generally must make continued beneficial use to maintain their rights, federal reserved water rights holders need not.

**B. Snake River Basin Adjudication**

The Snake River Basin watershed is one of the largest watersheds in North America, the majority of which is located in Idaho. In 1987, the State of Idaho commenced the Snake River Basin Adjudication ("SRBA") to determine all water rights within the Snake River Basin water system. The United States joined the litigation pursuant to its limited waiver of Sovereign Immunity under the McCarran Amendment, 43 U.S.C. § 666, which provides that "[c]onsent is given to join the United States as a defendant in any suit . . . for the adjudication of rights to the use of water" and that "[t]he United States, when a party to any such suit, shall  . . . be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty." The SRBA court culminated its 27-year effort with the issuance of its Final Unified Decree on August 26, 2014, in which the court decreed more than 158,600 water rights. With the exception of deferred claims for de minimis domestic and stockwater rights, the decree was "conclusive as to the nature and extent of all water rights within the Snake River Basin within the State of Idaho with a priority date prior to November 19, 1987" and was "binding against all persons." Final Unified Decree (August 26, 2014); Idaho Code § 42-1420(1); *see also Eden v. State (In re SRBA Case No. 39576)*, 429 P.3d 129, 133 (Idaho, 2018). In the Final Unified Decree, the SRBA court declared approximately 6,500 federal-law based stockwater rights and over 24,000

state-law based stockwater rights to the United States.

### C. *Joyce Livestock Co. v United States*

Over the course of the SRBA, questions arose regarding the ownership of water rights on federal Bureau of Land Management ("BLM") land. Historically, public lands were generally available for anyone to graze their stock. Livestock typically drank from whichever sources were available where they were grazing, thus establishing early constitutional stockwater rights for the ranchers who owned the livestock. After Congress passed the Taylor Grazing Act in 1934, setting forth a system regulating grazing on public lands, questions began to arise about whether federal agencies had also established beneficial use water rights through their management of the federally-owned lands where ranchers watered their livestock. The Idaho Supreme Court addressed these questions in the landmark decision *Joyce Livestock Co. v. United States (In re SRBA Case No. 39576)*, 156 P.3d 508 (Idaho 2007).

In *Joyce*, ranchers and the United States filed overlapping instream stockwater claims to rights in a creek abutting federal public lands managed by the BLM. The ranchers argued that prior owners of the base ranch (located miles away from the federal lands) had obtained beneficial use rights to the creek prior to the enactment of the Taylor Grazing Act by grazing and watering livestock on those federal lands. They also argued that those rights were transferred to them as appurtenances to the base ranch they purchased from the prior owners. On the other hand, the United States argued that the BLM's management and administration of the lands for grazing pursuant to the Taylor Grazing Act, combined with the fact that the federal government owned the lands that

were the points-of-use for the water, amounted to beneficial use that entitled them to constitutional stockwater rights.

The Idaho Supreme Court made two determinations in *Joyce* that are relevant to the issues before the Court today: (1) water rights obtained by watering livestock on federal land are appurtenant to a user's deeded base property, rather than the point of use;[5] and (2) absent an agency agreement with a rancher, BLM must put water to beneficial use itself to establish a beneficial use stockwatering right. The *Joyce* court also found that BLM management and the general administration of federally-owned lands were insufficient, without more, to constitute beneficial use.

### D.  Idaho Stockwater Legislation

Between 2017 and 2022, the Idaho Legislature enacted several statutes modifying its water rights policies in light of the *Joyce* decision. These statutes limit federal agencies' ability to acquire and retain water rights, and set forth a forfeiture process under which IDWR and the Idaho Attorney General must take a series of mandatory actions, beginning with the issuance of show-cause orders and culminating in a civil action for forfeiture against the United States in Idaho state court, before divesting a right holder of any claimed water right. Before the Court today are the United States' challenges to several of these statutes, specifically Idaho Code § § 42-113(2)(b), 42-

---

[5] In reaching this holding, the *Joyce* court reasoned that ranchers' water rights on public lands were "beneficial and useful adjuncts to their cattle ranches and would be of little use apart from the operations of their ranches." *Joyce Livestock Co.*, 156 P.3d at 514. Because "those water rights would be of little use independent of the ranch properties," the Idaho Supreme Court found "[i]t would be illogical to hold . . . that a water right in [a water source] cannot be appurtenant because the water is not used on the ranch." *Id.*

222(2), 42-224, 42-501, 42-502, and 42-504 (collectively, the "Idaho Statutes").

### E. Procedural History

Pursuant to the Idaho Statutes, on May 13, 2022, the IDWR issued three show-cause orders requiring the United States to show cause within twenty-one days why fifty-seven federally-owned stockwater rights should not be forfeited. On June 22, 2022, IDWR issued a fourth show-cause order requiring the United States to show cause within twenty-one days why another eleven federally-owned stockwater rights should not be forfeited.

After the orders were issued, the United States brought the present suit against the State Defendants challenging the constitutionality of the Idaho Statutes and seeking declaratory and injunctive relief. Dkt. 1. The State Defendants filed an answer to the original complaint. Dkt. 9. The United States then filed an amended complaint on July 15, 2022 (Dkt. 11), which the State Defendants answered on July 29, 2022 (Dkt. 13). Three days after the amended complaint was filed, the Legislature filed a Motion to Intervene. Dkt. 12. None of the then-existing parties objected, and the Court granted that motion. Dkt. 23. In the interim between the Legislature's Motion to Intervene and the Court's decision on the same, the Ranchers also filed a Motion to Intervene (Dkt. 19), which the Court also granted (Dkt. 42).

On December 16, 2022, the United States filed the instant Motion for Summary Judgment. Dkt. 34. In response, on March 17, 2023, the State Defendants filed a Cross-Motion for Summary Judgment. Dkt. 43. The Legislature subsequently filed its own Motion for Summary Judgment (Dkt. 53) and Response to the United States' Motion for

Summary Judgment (Dkt. 54) on April 17, 2023. That same day, the Ranchers filed a Response to the United States' Motion (Dkt. 55) and their own Motion for Summary Judgment (Dkt. 56). On June 21, 2023, the United States filed a Combined Response and Reply to each Defendant's Motions. Dkt. 60. Each Defendant replied. Dkts. 64, 65, 67.

Oral argument was held on January 23, 2023, and the Court took all motions under advisement.

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In a motion for summary judgment, the moving party bears the burden of production and persuasion. *Greene v. Camreta*, 588 F.3d 1011, 1021 (9th Cir. 2009) (vacated in part on other grounds by *Green v. Camreta*, 661 F.3d 1201 (9th Cir. 2011). Importantly, the Court does not make credibility determinations at this stage of the litigation. These determinations are reserved for the trier of fact. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992).

The standards applicable to motions for summary judgment do not generally change if the parties file cross motions. *See, e.g.*, *Cady v. Hartford Life & Accidental Ins.*, 930 F. Supp. 2d 1216, 1223 (D. Idaho 2013). However, the Court must evaluate each party's motion on its own merits. *Fair Housing Council of Riverside Cty., Inc. v.*

*Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

## IV. ANALYSIS

The Court will address each party's summary judgment motion in turn, and will then briefly address the State Defendants' Motion to file a Surreply. In their Cross-Motion for Summary Judgment, the State Defendants raise several arguments that challenge the Court's authority to hear this case in the first instance. Accordingly, the Court will address the State Defendants' Motion first.

### A. State Defendants' Motion for Summary Judgment

Two preliminary issues raised in the State Defendants' Motion must be addressed at the outset: whether the United States has abandoned its challenge to Idaho Code § 42-222, and whether the Court has jurisdiction to hear this case.

#### 1. *Idaho Code § 42-222*

In its Amended Complaint, the United States challenges six statutes: Idaho Code §§ 42-113(2)(b), 42-222(2), 42-224, 42-501, 42-502, and 42-504. *See* Dkt. 11, at 27–30. For reasons unknown to the Court, since filing its Amended Complaint, the United States has insisted that it is challenging §§ 42-113(2)(b), 42-224, 42-501, 42-502, and 42-504 but that it is *not* challenging § 42-222(2). *See* Dkt. 60, at 27 n.6, 56, 72; Dkt. 73, at 4–5. But this is simply not true. The United States' Amended Complaint makes abundantly clear that it believes § 42-222(2) to be unconstitutional. Dkt. 11, ¶ 92 (listing § 42-222(2) among statutes that allegedly violate the Supremacy Clause of the United States Constitution); ¶ 100 (listing § 42-222(2) among statutes that allegedly "violate the Property Clause of the United States Constitution"); ¶ 101–04 (listing § 42-222(2) among

statutes that allegedly "violate the Contract Clause of the United States Constitution"); ¶ 110(a)–(c) (requesting that the Court declare § 42-222(2) to be invalid and enjoin its enforcement). This conclusion is supported by the fact that, in the Amended Complaint, the United States raises its claims against § 42-222(2) in a manner materially identical to the manner in which it raises its claims against every other statute it is challenging. *See* Dkt. 11. Thus, the United States' arguments that it "did not intend to challenge Section 222(2)" ring disingenuous. Dkt. 73, at 5.

As the Court has discussed, when a party moves for summary judgment, that party bears the burden of production and persuasion. *Greene*, 588 F.3d at 1021. If the moving party meets its burden, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Where a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2).

In their Cross-Motion for Summary Judgment, the State Defendants argue the United States has failed to show that § 42-222(2) is facially invalid or has been unconstitutionally applied. Dkt. 43-1, at 61–64. Regarding facial validity, the State Defendants also argue in the affirmative, claiming that the statute is facially valid. *Id.* at 64–70. Instead of engaging with the State Defendants' arguments on this issue, the United States denies that it ever challenged § 42-222(2). *See, e.g.*, Dkt. 60, at 27 n.6. But, as already noted, this is demonstrably false. On this issue, the Court finds that the State Defendants have carried their burden. Accordingly, it was the United States' burden to

show that there remained disputed material facts. See *Zenith*, 475 U.S. at 586. It has not done so. Thus, because the United States failed to "properly address another party's assertion of fact," the Court deems the constitutionality of § 42-222(2) to be undisputed. Fed. R. Civ. P. 56(e)(2). It therefore GRANTS the State Defendants' Cross-Motion for Summary Judgment on this issue.

## 2. *Jurisdictional Challenges*

The Court now turns to the State Defendants' jurisdictional challenges. First, they argue that because the water rights underlying these claims were adjudicated in the SRBA, the United States' challenges to Idaho Code §§ 42-222(2) and 42-224 are barred by the doctrine of *res judicata.* Second, they argue that the *Rooker-Feldman* doctrine bars the Court from hearing this case because to hear the case would be to virtually hear an appeal of a state-court judgment. Third, they argue that the SRBA court has retained prior exclusive jurisdiction over these claims and, therefore, the claims must be dismissed. Fourth, they argue that the Court should abstain from hearing the case under the *Burford* abstention doctrine.

While "[i]t is most true that this Court will not take jurisdiction if it should not, [] it is equally true, that it must take jurisdiction if it should." *Cohens v. Virginia*, 19 U.S. 264, 404 (1821). The Court has "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Id.* For the reasons set forth below, the State Defendants' jurisdictional challenges fail, and the Court must exercise its jurisdiction over this case.

a. Res Judicata/ Claim Preclusion

The doctrine of res judicata, also known as claim preclusion, prohibits parties from "relitigating issues that were or could have been raised" in a prior action when that prior action was a final judgment on the merits. *Federated Dep't Stores Inc. v. Moitie*, 452 U.S. 394, 398 (1981). As a rule, res judicata is established by "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1052 (9th Cir. 2005).

Claims between two cases are considered identical when they "arise from the same transactional nucleus of facts" *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003) (cleaned up). Even "[n]ewly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action." *Id.*

Here, the United States' claims *could not* have been brought in the earlier action, because the Idaho Statutes at issue did not exist at the time the SRBA took place. The Idaho Statutes were passed between 2018 and 2022. The SRBA Final Unified Decree was issued in 2014, several years prior to even the earliest of the Idaho Statutes' passage. This fact alone is sufficient to distinguish the case before the Court today from any prior litigation and adjudication. What's more, the facts underlying the SRBA and the present case are distinct. The SRBA was an administrative and adjudicative process to determine ownership and priority of water rights in the Snake River Basin. This case does not involve any determination of water rights at all; rather, it is a series of constitutional challenges to a set of statutes that had been neither passed nor proposed at the time of the

SRBA. This case arises out of an entirely distinct set of facts—the passage of new laws, the setting forth of novel water right forfeiture procedures, and the issuance of show-cause orders based thereupon—than those at issue in the SRBA. Thus, the Court cannot find the facts between the two cases are identical for purposes of establishing res judicata. Because they cannot meet this element of res judicata, the State Defendants have failed to show that the United States' claims are precluded.[6]

b. Rooker-Feldman Doctrine

Next, the State Defendants argue this case should be dismissed pursuant to the *Rooker-Feldman* doctrine because the United States is seeking to undermine judgment from the SRBA court and the Final Unified Decree by redefining the rights it was awarded therein. Dkt. 43-1, at 44–45.

"[U]nder . . . the *Rooker-Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006). Federal jurisdiction is improper if the plaintiff "complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court." *Noel v. Hall*, 341 F.3d 1148, 1162 (9th Cir. 2003). Put differently, lower federal courts must not become a court of appeals for state court decisions.

Conversely, the *Rooker-Feldman* doctrine does *not* bar jurisdiction when "the federal plaintiff does not complain of a legal injury caused by a state court judgment, but rather of a legal injury caused by an adverse party." *Id*. at 1162; *see also Lance*, 546 U.S.

---

[6] Because the Court finds the State Defendants cannot meet the first element of a *res judicata* analysis, it need not address the remaining elements—final adjudication and privity. *See Melendres v. Arpaio*, 154 F. Supp. 3d 845, 857 n.1 (D. Ariz. 2016).

at 464 (explaining that cases since *Feldman* emphasize the narrowness of the *Rooker-Feldman* rule). In determining "whether an action functions as a de facto appeal, [courts] pay close attention to the relief sought by the federal-court plaintiff." *Cooper v. Ramos*, 704 F.3d 772, 777–78 (9th Cir. 2012) (cleaned up).

The United States' Complaint falls under this latter category, and the *Rooker-Feldman* doctrine does not apply. Contrary to the State Defendants' assertions, the United States is not bringing an appeal-like action to review what the SRBA court did, nor does it seek to undermine any other Idaho state court judgment. Rather, it brings a series of constitutional challenges to the Idaho Statutes (statutes which, as the Court has noted, did not exist at the time of the SRBA proceedings) and IDWR's actions taken pursuant to those statutes. The United States is not seeking re-adjudication of the water rights decreed in the SRBA; it is challenging the procedures set forth in recent statutes to divest it of those, and other, water rights. Said another way, the United States is not pursuing a de facto appeal because its Amended Complaint alleges injuries caused by the State Defendants, not the SRBA (or any other state) court. This is underscored by the relief the United States seeks: declaratory and injunctive relief from the Idaho Statutes, not relief from any state-court judgment. Accordingly, the *Rooker-Feldman* doctrine is inapplicable here and does not bar the Court from exercising its jurisdiction over this action.

   c.   Prior Exclusive Jurisdiction

The State Defendants next contend the Court should dismiss this action because, they allege, the SRBA Court has prior exclusive jurisdiction over the United States' claims. Dkt. 43-1, at 45–49.

MEMORANDUM DECISION AND ORDER - 15

In general, "the pendency of a prior suit in another jurisdiction" does not bar another court from hearing a related case "even though the two suits are for the same cause of action." *Stanton v. Embrey*, 93 U.S. 548, 554 (1876). However, to avoid inconsistent dispositions and piecemeal litigation of real property, the Supreme Court has established an exception called the prior exclusive jurisdiction doctrine for actions concerning such property. The Supreme Court has explained that when "a court has custody of property, that is, proceedings in rem or quasi in rem . . . the state or federal court having custody of such property has exclusive jurisdiction to proceed." *Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964). "An action is in rem when it determines interests in specific property as against the whole world." *Goncalves By & Through Goncalves v. Rady Child.'s Hosp. San Diego*, 865 F.3d 1237, 1254 (9th Cir. 2017) (cleaned up). If the action seeks "merely to determine the personal rights and obligations of the parties," on the other hand, it is *in personam*. *Id.*

The State Defendants' invocation of the prior exclusive jurisdiction doctrine here is inapposite. The claims before the Court today are not in rem proceedings. The United States does not ask the Court to adjudicate any property interests here. Indeed, the claims brought by the United States deal with questions of statutory constitutionality, not the disposition of property. The Court acknowledges that the SRBA court retains jurisdiction to resolve issues related to the existence, validity, and substance of water rights possessed by the parties before it "as against the whole world." *Goncalves*, 865 F.3d at 1254. But the SRBA court does *not* retain (nor did it ever have) jurisdiction to review the constitutionality of legislation enacted subsequent to that adjudication. That task falls

MEMORANDUM DECISION AND ORDER - 16

squarely within the jurisdiction of this Court, and is not in any way limited by the doctrine of prior exclusive jurisdiction.

    d.  <u>Burford Abstention</u>

In its final jurisdictional challenge, the State Defendants argue that the Court should abstain from hearing the case under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). The Ninth Circuit has set forth a three-factor test that must be met for a Court to exercise *Burford* abstention: (1) "the state has chosen to concentrate suits challenging the actions of the agency involved in a particular court;" (2) the "federal issues could not be separated easily from complex state law issues with respect to which state courts might have special competence; and (3) "federal review might disrupt state efforts to establish a coherent policy." *City of Tucson v. United States W. Communs.*, 284 F.3d 1128, 1133 (9th Cir. 2002) (cleaned up). When these elements are met, abstention is a question of discretion. *Id.* at 1132.

The Supreme Court has made clear that "*Burford* represents an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996). Furthermore, although "*Burford* is concerned with protecting complex state administrative processes from undue federal influence, it does not require abstention whenever there exists such a process, or even in all cases where there is a potential for conflict with state regulatory law or policy." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 362 (1989).

As it pertains to the first element, the Court acknowledges that the state of Idaho

has in large part "chosen to concentrate suits challenging the actions of the agency involved" in a particular court. Idaho has designated the SRBA District Court as the forum for all Idaho water rights adjudications and for petitions for judicial review of IDWR's water rights administration decisions under Idaho Statutes. Dkt. 43-1, at 51. But the Court reiterates that actions to determine ownership of water rights are distinct from actions challenging statutory constitutionality. Furthermore, while Idaho has consolidated suits challenging IDWR actions to the SRBA court, the second and third elements necessary to abstain under *Burford* are not met. True, water rights are a vital issue in the arid west, including Idaho, and the State has legislated extensively in the area of water law. However, the Court finds no difficulty in separating the *constitutional* questions before it today—whether the Idaho Statutes violate various provisions of the federal and Idaho Constitution—from the intricacies of state substantive water law. Accordingly, the second prong fails. For similar reasons, the third prong also fails: surely, part of developing a policy that is "coherent" is ensuring that it is also logical and consistent with the United States and Idaho constitutions.[7]

Because the elements necessary to abstain under *Burford* are not met here, and having found no merit in the State Defendants' other jurisdictional challenges, the Court must fulfill its duty to adjudicate this action. Accordingly, the Court DENIES the State Defendants' Motion for Summary Judgment with respect to the res judicata, *Rooker-Feldman*, prior exclusive jurisdiction*,* and *Burford* arguments therein.

---

[7] *See, e.g.,* Oxford's English Dictionary. Coherent: (of an argument, theory or policy) logical and consistent.

MEMORANDUM DECISION AND ORDER - 18

The remainder of the arguments State Defendants' raise in their Motion are counterarguments raised in response to the United States' constitutional challenges in its Motion for Summary Judgment. To avoid redundancy, the Court will address the State Defendants' counterarguments in its analysis of the United States' Motion below.

## B. United States' Motion for Summary Judgment

In its Amended Complaint, the United States seeks both declaratory and injunctive relief from enforcement of the Idaho Statutes based on various alleged violations of the United States and Idaho Constitutions. Because the United States apparently brings both facial and as-applied challenges to the statutes, the Court will touch on the distinction between these types of legal challenges before addressing each claim in turn below.[8]

"A facial challenge is a challenge to an entire legislative enactment or provision," whereas an as-applied attack "challenges only one of the rules in a statute, a subset of the statute's applications, or the application of the statute to a specific factual circumstance." *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011). A statute is facially unconstitutional if it "is unconstitutional in all of its application." *Wash. State Grange v. Wash State Republican Party*, 552 U.S. 442, 449 (2008). As the Court has previously explained, "facial challenges are disfavored" for three reasons: they "(1) raise the risk of premature interpretation of statutes on factually barebone records; (2) run contrary to the fundamental principle of judicial restraint; and (3) threaten to short circuit the democratic

---

[8] In its Amended Complaint, the United States challenges six Idaho Statutes: I.C. § § 42-113(2)(b); 42-222, 42-224, 42-501, 42-502, and 42-504. However, as explained, the United States did not make any arguments regarding § 42-222 in its Motion, and in fact disclaimed its intent to pursue any claims related to that statute. Because the Court has already dismissed all claims related to § 42-222, it will not address that particular section further.

process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Hecox v. Little*, 479 F. Supp 3d 930, 969 (D. Idaho 2020) (cleaned up). The Supreme Court has noted that facial challenges are "the most difficult to mount successfully, since the challenger must establish that *no set of circumstances* exists under which the [challenged] Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987) (emphasis added).

Additionally, because the United States discusses the legislative history, as well as the alleged legislative intent, at length in its briefing, the Court touches briefly on the role of intent in a constitutional analysis before proceeding. As the Supreme Court has noted "[i]t is a familiar principle of constitutional law that [courts] will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive." *United States v. O'Brien*, 391 U.S. 367, 383 (1968). Rather than discriminatory motive, intent, or purpose, courts look to the text and inevitable effects of a statute to determine its constitutionality. *Id.* at 384–85.

The Court now turns to each of the United States' claims in its Motion for Summary Judgment.

### 1. Supremacy Clause – Intergovernmental Immunity

The United States first argues that the Idaho Statutes discriminate against the United States in violation of the Supremacy Clause and the doctrine of intergovernmental immunity. Dkt. 34-1, at 18.

The doctrine of intergovernmental immunity stems from the Supremacy Clause of the United States Constitution, which guarantees, in part, that "the Laws of the United

States . . . shall be the supreme Law of the Land . . . , any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. As the Supreme Court has explained, "[t]he Constitution guarantees the entire independence of the General Government from any control by the respective states." *Trump v. Vance*, 140 S. Ct. 2412, 2425 (2020) (cleaned up). Intergovernmental immunity "prohibits state laws that either regulate the United States directly or discriminate against the Federal Government or those with whom it deals." *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 758 (9th Cir. 2022) (cleaned up).

Put simply, a state law discriminates against the federal government when "it treats someone else better than it treats them;" or, conversely, when it treats the federal government worse than it treats everyone else. *Washington v. United States*, 460 U.S. 536, 545 (1983). The Supremacy Clause and the doctrine of intergovernmental immunity make clear that the states may not single out the United States—including its agencies—for special disfavor.

The Court will analyze the constitutionality of each of the challenged statutes under the Supremacy Clause.

a. Idaho Code § 42-502

The United States argues Idaho Code § 42-502 discriminates against the United States on its face by requiring federal agencies—and only federal agencies—to own livestock as a condition to acquire stockwater rights. Idaho Code § 42-502 states "[n]o

agency of the federal government shall acquire a stockwater right[9] unless the agency owns livestock and puts the water to beneficial use."

The State Defendants and the Legislature claim that the statute is intended to merely codify what was already law under *Joyce*. But this statute goes further than *Joyce*'s holding. *Joyce* only foreclosed a party's ability to obtain *constitutional* stockwater rights without livestock ownership; under *Joyce*, the United States could still, at least in theory, obtain statutory water rights without owning livestock. But section 42-502 bars the federal government from obtaining *any* kind of stockwater rights without owning livestock.

In addition to going beyond the restrictions set forth in *Joyce*, this statute singles out federal agencies for disfavored treatment. The livestock ownership requirement in § 42-502 applies *only* to federal agencies. By requiring federal agencies to jump an additional hurdle—livestock ownership—that other parties need not clear, § 42-502 expressly discriminates against the United States. Such discrimination clearly violates the intergovernmental immunity doctrine and the Supremacy Clause. Accordingly, the Court GRANTS the United States' Motion for Summary Judgment on its Supremacy Clause claim with respect to Idaho Code § 42-502.

### b.  Idaho Code § 42-113(2)(b)

The United States next argues Idaho Code § 42-113(2)(b) discriminates against the United States on its face by making federally-owned (and only federally-owned)

---

[9] The statute defines stockwater rights as "water rights for the beneficial use of livestock." Idaho Code § 42-502.

stockwater rights appurtenant to permittees' base property rather than the federally-owned point of use. Under Idaho Code § 42-113(2)(b), stockwater rights associated with grazing on federally-owned or managed land "shall be an appurtenance to the base property." Section 42-113(2)(b) also provides that "[w]hen a federal grazing permit is transferred or otherwise conveyed to a new owner, the associated stockwater rights may also be conveyed and, upon approval of an application for transfer, shall become appurtenant to the new owner's base property."

The State Defendants argue that while the statute may treat the federal government *differently*, it does not treat the federal government *worse*. Dkt. 43-1, at 73–74. According to State Defendants, making rights appurtenant to, and transferable with, base properties would help the federal government because it would help prevent problems with former grazing permit holders not transferring their water rights to new permit holders. *Id.*

This argument was contested by the United States in briefing and at oral argument, and is somewhat misleading. As the United States points out, allowing permittees to transfer their water rights to subsequent permittees is not the same as requiring them to do so, and still leaves the door open to the adverse impacts the federal grazing program may feel if this statute is enforced. Section 42-113(2)(b) allows private lessees that own stockwater rights to potentially convey those rights to other parties even after they no longer hold a grazing permit in conjunction with those rights. Dkt. 79, at 10–11. This means those rights would no longer be available to the federal government to convey to new permittees in tandem with permits issued for grazing on federal lands. *Id.* The United States has shown that making rights appurtenant to privately-owned base properties

rather than the federally-owned place of use under § 42-113 could make rights unavailable to the federal government to support its grazing program. More importantly, only stockwater rights associated with federally-owned land are affected by this statute; state- and privately-owned water rights are not similarly regulated. Because intergovernmental immunity "prohibits state laws that . . . discriminate against the Federal Government or those with whom it deals," § 42-113(2)(b) runs afoul of the Supremacy Clause. The Court finds this sufficient to demonstrate that § 42-113(2)(b) discriminates against the United States and, accordingly, it GRANTS summary judgment on the United States' Supremacy Clause claim with respect to Idaho Code § 42-113(2)(b).

### c. Idaho Code § 42-224

The United States next brings an as-applied challenge to § 42-224 arguing that it discriminates against the United States by limiting agency-relationship based forfeiture defenses for stockwater rights located on federal lands without extending that limitation to rights on private lands.

In general, § 42-224 sets forth new procedures for initiating forfeiture proceedings for stockwater rights. The United States' argument takes specific issue with § 42-224(4), which provides that IDWR

> [S]hall not issue an order to show cause where the director has or receives written evidence signed by the principal and the agent, prior to the issuance of said order, that a principal/ agent relationship existed during the five (5) year term [preceding the date of the forfeiture petition] or currently exists between the owners of the water right as a principal and a permittee or lessee as agent for the purpose of obtaining or maintaining the water right.

MEMORANDUM DECISION AND ORDER - 24

I.C. § 42-224 (4).

The United States argues this provision narrows the common-law agency defense to forfeiture that was recognized under *Joyce*, and in doing so precludes the United States from obtaining and presenting agency agreements in response to the issuance of show cause orders. Dkt. 34-1, at 33.

Despite the United States' contentions, Idaho Code § 42-224 does not single out the federal government for special disfavor either on its face or in application. While true that the statute limits the defenses to forfeiture in some ways, those limitations are generally applicable to all stockwater rights owners, not just the United States and its agencies. For example, the State Defendants point out that the Idaho State Department of Lands, which leases thousands of acres of state lands for grazing, is also subject to the same forfeiture provisions in § 42-224 in exactly the same manner as the United States. Dkt. 43-1, at 65.

The procedures set forth in § 42-224 treat the United States no differently than any other public or private stockwater rights owner. Accordingly, the Court DENIES the United States' Motion for Summary Judgment with respect to its § 42-224 Supremacy Clause claim.

d. Idaho Code § 42-504

Finally, the United States argues that § 42-504 discriminates against the United States by prohibiting changes to the purpose or place of use of federally-held stockwater rights. Section 42-504 states:

> If an agency of the federal government, or the holder or holders of any livestock grazing permit or lease on a federal grazing allotment, acquires a stockwater right, that stockwater right shall never be utilized for any purpose other than the watering of livestock on the federal grazing allotment that is the place of use for that stockwater right.

Idaho Code § 42-504.

The State Defendants argue that this section is nondiscriminatory because it reflects limitations that have always been part of Idaho law. They contend that an earlier version of another section of the Idaho Code already limited the purpose and place of use elements of the BLM's stockwater rights even before § 42-504 was enacted. Dkt. 43-1, at 73–74. Because § 42-504 mirrors that prior statute, the State Defendants argue that it does not violate the Supremacy Clause.

The Court finds these arguments unpersuasive. That an earlier statute also restricted the federal government in a manner that it did not restrict other parties has no bearing on the constitutionality of the statute before the Court today. If anything, it only demonstrates that the history of discrimination against the federal government and its agencies in this context predates the recent enactment of the Idaho Statutes.

Regardless, as the United States points out, § 42-504 makes administrative processes to apply for changes to the purpose and place of use of their rights—processes that are available to all other water rights holders—unavailable to federal agencies and their permittees. This plainly singles out the federal government for disfavored treatment and clearly violates the Supremacy Clause on its face. Accordingly, the Court GRANTS the United States' Motion for Summary Judgment with respect to its § 42-504 Supremacy Clause claim.

As a final note, the Court addresses the State Defendants' argument that §§ 42-113(2)(b), 42-502, and 42-504 can be constitutionally applied if they are only applied prospectively, rather than retrospectively to water rights already owned by the United States. Dkt. 43-1. Not so. The statutes single out the United States explicitly in their text; the discriminatory nature of the statutory language will not change by nature of the point in time when they are applied. Thus, absent some intervening legislative act ameliorating the discriminatory nature of the statutes, they will violate the Supremacy Clause whether they are applied to rights the United States now owns or rights it will own in the future. As the statutes now stand, there is no circumstance in which they can be constitutionally applied; discriminatory treatment of the United States and its agencies violates the Supremacy Clause regardless of when it occurs. The State Defendants' arguments on this point are, therefore, without merit. The Court finds that the United States is entitled to declaratory judgment that §§ 42-113(2)(b), 42-502, and 42-504 violate the Supremacy Clause of the Constitution.

### 2. Sovereign Immunity – McCarran Amendment

Next, the United States argues it has not waived its sovereign immunity and is, therefore, not subject to Idaho's forfeiture proceedings. Dkt. 43-1, at 24.

In general, the United States can only be sued when Congress has consented to suit. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Navajo Nation*, 537 U.S. 488, 502 (2003) (cleaned up). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475

(1994).

In 1952, Congress enacted the McCarran Amendment, a partial waiver to sovereign immunity allowing the United States to be "joined as a party in state-court general water rights' adjudication." *Cappaert v. United States*, 426 U.S. 128, 146 (1976). The McCarran Amendment, codified at 43 U.S.C. § 666, states in part:

> Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to any such suit, shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the extent as a private individual under like circumstances: Provided, That no judgment for costs shall be entered against eh United States in any such suit.

43 U.S.C. § 666(a).

The problem with the United States' sovereign immunity "claim" is that it is not a claim at all. Sovereign immunity is a defense from suit; it does not give rise to a cause of action of its own. As the Ranchers correctly point out, "[a]t best, the agencies are anticipating the day when they are sued by the state" and affirmatively asserting their sovereign immunity defense as a claim for relief. Dkt. 54, at 32. But sovereign immunity is a shield to defend against suit, not a sword that may be wielded against a hypothetical foe in an imaginary future battle. Were the United States to be joined as a defendant in proceedings pursuant to Idaho Code § 42-224, the question of whether the McCarran Amendment waives the United States' sovereign immunity for those proceedings would

be properly before the Court. However, because no such controversy is before the Court in this case, it must leave resolution of that question for another day. Accordingly, the Court DENIES the United States' Motion for Summary Judgment with respect to its sovereign immunity claim, and DISMISSES the claim.

### 3. Property Clause

Third, the United States argues the Idaho Statutes violate the Property Clause of the Constitution.[10] As a preliminary matter, the Court notes that several of the arguments and cases cited by the United States in support of this claim deal with the Takings Clause, rather than the Property Clause.[11] See Dkt. 34-1, at 41; Dkt. 60, at 34–35. The United States did not plead a Takings Clause claim in its Amended Complaint, nor has it formally identified its arguments under that label. The Court does not mean to elevate form over substance. But the Ninth Circuit has instructed that courts "not rewrite a plaintiff's complaint to contain a count that was not included in it by deciding issues argued but not pleaded." *Rent Info Tech., Inc. v. Home Depot U.S.A., Inc.*, 268 Fed. App'x. 555, 558 (9th Cir. 2008) (cleaned up). This makes good sense; properly pleading at the outset all claims a party intends to raise ensures that responding parties have adequate notice and time to brief all relevant issues. Because the United States, by

---

[10] In its Motion, the United States does not identify which of the Idaho Statutes in particular it challenges under the Property Clause. This omission is immaterial because, as the Court explains below, the United States' Property Clause claim fails with respect to all of the Idaho Statutes.

[11] For example, the United States cites *United States v. Orr Water Ditch Co.*, in both its Motion and its response brief as support for its Property Clause arguments. 256 F.3d 935 (9th Cir. 2001). There, the Ninth Circuit opined that the retroactive application of a new forfeiture statute in Nevada to water rights that vested before its enactment may run afoul of the Takings Clause. *Id.* at 942. However, because the Nevada legislature modified the statute at issue there to avoid the potential constitutional problem, that particular question was not before the court.

omitting a Takings Claim from its complaint, did not afford the responding parties that opportunity here, the Court adjudicates only the United States' Property Clause arguments.

The Property Clause of the United States Constitution provides that Congress has the power "to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const. art IV, § 3, cl.2. Congress's power under the Property clause is broad: the Supreme Court has held that the Clause authorizes "an exercise of the complete power which Congress has over particular public property entrusted to it." *Kleppe v. New Mexico*, 426 U.S. 529, 541 (1976) (quoting *United States v. San Francisco*, 310 U.S. 16, 30 (1940).  The Supreme Court has also "consistently recognized the expansiveness of this power, stating that 'the power over the public land thus entrusted to Congress is without limitations.'" *United States v. Gardner*, 107 F.3d 1314 (9th Cir. 1997) (quoting *Kleppe*, 426 U.S. at 539). Under the Property Clause, "Congress exercises the powers both of a proprietor and of a legislature over the public domain." *Kleppe*, 426 U.S. at 540. That said, "because the Constitution protects rather than creates property interests, the existence of a property interest is determined by reference to existing rules or understandings that stem from an independent source such as state law." *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998) (cleaned up).

The Idaho Supreme Court has held time and again that under Idaho law, water rights are real property. *See, e.g., Eagle Creek Irrigation Co. v. A.C. & C.E. Invs., Inc.*, 447 P.3d 915, 924 (Idaho 2019) ("In Idaho, water rights are real property."); *Olson v.*

*Idaho Dept. of Water Resources*, 966 P.2d 188, 191 (Idaho, 1983) (same); *see also* Idaho Code § 55-101 ("Real property or real estate consists of . . . ditch and water rights. . . ."). Idaho's classification of water rights as real property provides an independent state law source establishing that the United States has a vested property interest in its water rights.[12] Thus, the water rights the United States owns within Idaho's borders are "property belonging to the United States" within the meaning of the Property Clause.[13]

Given this vested property interest, the United States argues that Idaho cannot pass laws leading to forfeiture of its water rights because the power to dispose of federal property is reserved to Congress under the Property Clause. Dkt. 34-1, at 41. In support of this contention, the United States relies on *Kleppe*.

In *Kleppe*, the state of New Mexico challenged a Congressional statute regulating wildlife living on public lands. 426 U.S. at 529. The state argued Congress could obtain exclusive legislative jurisdiction over the public lands in a state only with state consent, and that without that consent, Congress lacked the power to act contrary to state law. The Supreme Court rejected this argument, finding instead that only Congress "retains the power to enact legislation respecting [federal] lands pursuant to the Property Clause." *Id.*

---

[12] In its brief in support of its cross-motion for summary judgment, the Legislature argues that the United States' water rights are not property rights at all, but rather are merely "usufructary," or use rights. Dkt. 54, at 31. Idaho law directly contradicts this position, as both Idaho statutory law (Idaho Code § 55-501) and common law (*see, e.g., Olson*, 966 P.2d at 191) define water rights as real property.

[13] This is not to say that the United States' water rights would not be governed by the Property Clause were Idaho to classify the rights as personal, rather than real, property. Nothing in the plain text of the Property Clause limits its applicability to real property. But judicial interpretation of the Property Clause has yet to determine the scope of "other Property." *See* Tom W. Bell, *"Property" in the Constitution: The View from the Third Amendment*, 20 William & Mary Bill of Rights J. 1243, 1252 (2012) ("it appears that judicial opinions have held that the Property Clause encompasses personal property *sub silentio*, at most"). That being said, what case law does exist has interpreted the Property Clause broadly as a plenary grant of Congressional authority over the disposition of federally-owned real property.

at 543. The Supreme Court further explained its reasoning that a "different rule would place the public domain of the United States completely at the mercy of state legislation." *Id*. (cleaned up).

The Ninth Circuit followed a similarly broad interpretation of the Property Clause in *Gardner*. There, the Ninth Circuit explained that "under the Property Clause, the United States can administer its federal lands any way it chooses . . . ." 103 F.3d at 1317.

There is a common element in cases interpreting the Property Clause that both the United States' Amended Complaint and its Motion lack. Each case interpreting the Property Clause addresses a congressional act that is either contradicted by state law or otherwise challenged by a state. *See, e.g., Kleppe*, 426 U.S. at 543 (stating that Congress "surely retains the power to enact legislation respecting those [federal] lands pursuant to the Property Clause. And when Congress so acts, the federal legislation necessarily overrides conflicting state laws under the Supremacy Clause." (cleaned up)). But here, the United States has not pointed to any act of Congress with which the Idaho Statutes conflict. True, the United States argues that the State Defendants have "not identified, and cannot identify any Congressional authority to support [the] dissolution of federal property rights attempted here." Dkt. 34-1, at 41. But the United States bears the burden in its motion, and it has not cited (nor is the Court aware of) any decision finding a Property Clause violation in the absence of some conflicting federal legislative act that overrides state law. To the contrary, the Supreme Court has repeatedly *deferred to* state law in the absence of a federal conflict. *See California v. United States*, 438 U.S. 645, 653 (1978) (explaining that the history of water rights adjudication in the west reveals a

"consistent thread of purposeful and continued deference to state water law by Congress.").

In the absence of any conflicting congressional act, the Court finds that the Idaho Statutes do not violate the Property Clause. Accordingly, the Court DENIES the United States' Motion for Summary Judgment with respect to its Property Clause claim for each of the Idaho Statutes.

### 4. Contracts Clause

The United States next argues that the Idaho Statutes[14] violate the Contracts Clause because they undermine the reasonable expectations of the contractual bargains the United States entered into when it settled its claims with other water users during the SRBA. Dkt. 34-1, at 42–43. The Contracts Clause provides "no State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." U.S. Const. art. I, § 10, cl. 1, thereby "restrict[ing] the power of States to disrupt contractual arrangements." *Sveen v. Melin*, 584 U.S. 811, 818 (2018).

The Supreme Court has articulated a three-part framework for determining whether a legislative act violates the Contracts Clause. First, the Court must determine whether the challenged statutes substantially impair a contractual relationship. *Gen. Motors Corp v. Romein*, 503 U.S. 181, 185 (1992). This threshold inquiry "has three

---

[14] In its Amended Complaint, the United Statute alleges that § § 42-113(b), 42-222(2), 42-224, 42-501, and 42-502 violate the Contracts Clause. Dkt. 11, at 28–29. However, the only statutes the United States specifically argued violate the Contracts Clause in its Motion and briefing are § § 42-113(b) and 42-224. Accordingly, the Court conducts its Contracts Clause analysis with respect to only the two statutes for which the United States pleaded a Contracts Clause claim and set forth arguments in its Motion and responsive briefing.

components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992). If the court finds that a statute substantially impairs a contractual relationship, it proceeds to the second part of the analysis: determining whether the act serves a "significant and legitimate public purpose." *Energy Reserves Group v. Kansas Power & Light Co.*, 459 U.S. 400, 411 (1983). Third and finally, the court must determine whether the impairment is reasonable and appropriate relative to the public purpose it advances. *Id.* at 413.

    a.  <u>Existence of a Contractual Relationship</u>

The United States argues that the Contracts Clause applies to contracts of any kind, including settlement agreements and consent decrees like those involved in the SRBA Final Unified Decree. Dkt. 34-1, at 43. No party disputes the classification of these settlement agreements and consent decrees as contracts for purposes of this claim.

Additionally, support for the classification of settlement agreements and consent degrees as contracts abounds in Supreme Court, Ninth Circuit, and Idaho precedent. For example, the Supreme Court has instructed that "a consent decree or order is to be construed for enforcement purposes basically as a contract . . . ." *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 238 (1975). The Ninth Circuit has affirmed that courts should use contract law and contract interpretation principles when construing consent decrees. *Thompson v. Enomoto*, 915 F.2d 1383, 1388 (9th Cir. 1990). And Idaho courts similarly interpret and enforce consent decrees using contract principles. *Rangen, Inc. v Idaho Dep't of Water Res.*, 284 P.3d 225, 248 (Idaho 2012).

Here, the rights adjudicated in the SRBA were negotiated into settlement agreements and formalized as consent decrees incorporated into the Final Unified Decree. Consistent with Supreme Court, Ninth Circuit, and Idaho practice, the Court finds that the consent decrees declaring the water rights underlying this litigation constitute a contractual relationship for purposes of the United States' Contracts Clause claim.

Having determined that the Final Unified Decree establishes a contractual relationship to which the Contracts Clause applies, the Court must next determine whether that relationship was substantially impaired here.

b. Substantial Impairment of Contractual Relationship

In determining whether a legislative act substantially impairs a contractual relationship, courts look to the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating its rights. *Sveen*, 584 U.S. at 818.

Additionally, the Supreme Court has held that "the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms." *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 429–30 (1934) (cleaned up). Thus, the laws in place at the time the Final Unified Decree was issued "enter into and form a part of" the contractual relationship established therein. *Id.*

i.      *§ 42-113(b)*

The United States first challenges § 42-113(b) under the Contract Clause. The United States does not identify specifically how this statute impairs the negotiated-for

MEMORANDUM DECISION AND ORDER - 35

contractual bargain underlying the Final Unified Decree. Rather, the United States asserts generally that by making rights appurtenant to the base property instead of the place of use, § 42-224 "seek[s] to forfeit and/or put new restrictions on the water rights that the SRBA decreed" to the United States. Dkt. 60, at 56.

The Legislature counters that the rights decreed under the SRBA were already subject to Idaho law regarding forfeiture and appurtenancy before § 42-113(b) was enacted, and, as a result, the statute does not substantially impair the contractual relationship established by the Final Unified Decree. Dkt. 54, at 36.

The United States may well be correct that § 42-113(2)(b), if applied to rights already perfected under the Final Unified Decree, would impair the reasonable expectations of the parties to that decree at the time it was entered into. The general rule in Idaho is that water rights are appurtenant to the lands at the point of use, not the base property of any permit holder. *See* Idaho Code § § 42-101; 42-402.

Because of this, all parties to the Final Unified Decree, including the United States, may reasonably have expected that their rights, too, would be appurtenant to their place of use. In changing the appurtenancy of the rights, § 42-113(2)(b) could impair that reasonable expectation if applied to rights under the Final Unified Decree.

The problem with the United States' claim, though, is that it has not shown that Defendants have applied § 42-113(2)(b) to any of its stockwater rights declared under the Final Unified Decree. As the Court will explain in its Retroactivity Clause analysis, "prospectivity is the default rule in statutory interpretation," and absent any clear expression of legislative intent to the contrary, courts interpret statutes to apply only

prospectively. *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1189 (9th Cir. 2011).

The Idaho Statutes contain no provision demonstrating legislative intent that they be applied retroactively. Accordingly, the Court construes them to apply only prospectively. And § 42-133(2)(b) *does not* violate the Contracts Clause when applied only prospectively; no impairment to reasonable expectations occurs if the provision is applied only to rights acquired by contract after it was passed, because the provision "enter[s] into and form[s] a part of" those contracts. *Blaisdell*, 290 U.S. at 429–30. Because the statute can be constitutionally applied under those circumstances, § 42-113(2)(b) withstands any facial challenge under the Contracts Clause. *See Wash. State Grange*, 552 U.S. at 449 (2008) (explaining that a statute is facially unconstitutional only if "it is unconstitutional in every conceivable application").

Thus, the United States' only path to prevail on its Contracts Clause claim would be via an as-applied challenge. But any such challenge similarly fails, because there is no evidence in the record that § 42-113(2)(b) has been applied to rights acquired by the United States under the Final Unified Decree, and thus no evidence that its expectations under that agreement were impaired. Because the United States has not met its burden to show the statute has been applied to any stockwater rights owned by the United States (let alone any declared under the Final Unified Decree), the Court finds there has been no substantial impairment to the reasonable expectations of the United States under the Final Unified, or any other, decree. In the absence of any substantial contractual impairment, the Court ends its Contracts Clause inquiry into § 42-113(2)(b) there.

ii.    *§ 42-224*

The United States next argues that I.C. § 42-224 violates the Contract Clause because the forfeiture for a five-year period of nonuse outlined in that statute undermines the contractual bargain that the parties to the SRBA negotiated when they entered into the Final Unified Decree. For their part, Defendants argue that the Final Unified Decree is not undermined because Idaho law has virtually always provided that water rights, regardless of who owns them, may be forfeited through a five-year period of nonuse.

The Court is persuaded by Defendants' argument. True, § 42-224 did not exist at the time the Final Unified Decree was issued. Nor did any procedural mechanism similar to the one set forth in § 42-224 exist at that time. But the ultimate effect of § 42-224—forfeiture after a five-year period of nonuse—has been Idaho law for more than a century. Since 1905, Idaho water law has provided that a water right "shall be lost and abandoned by a failure, for the term of five years, to apply it to the beneficial use for which it was appropriated . . . ." 1905 Idaho Sess. Laws 27–28. As the law stood at the time the Final Unified Decree was entered, the United States was subject to forfeiture through nonuse for a term of five years. As the amended law now stands, the United States is still subject to the same risk. Thus, § 42-224 leaves intact the bargained-for exchange between the parties to the SRBA, and leaves unchanged the expectation that the United States (and any other rights holder) could forfeit its water rights after a defined period of nonuse. That the procedural mechanism for *how* the forfeiture process is initiated is immaterial; the ultimate burden on the property interest—its potential loss through forfeiture by nonuse—is the same as it has virtually always been. Therefore, § 42-224 does not

substantially impair the contractual relationship that exists under the Final Unified Decree. Consequently, the Court finds that § 42-224 does not violate the Contracts Clause.

   5. *Retroactivity Clause of the Idaho Constitution*

Finally, the United States argues § § 42-113(2)(b), 42-224, and 42-504 violate the Retroactivity Clause of the Idaho Constitution. The Retroactivity Clause of the Idaho Constitution states that "[t]he legislature shall pass no law for the benefit of a railroad, or other corporation, or any individual, or association of individuals retroactive in its operation, or which imposes on the people of any county or municipal subdivision of the state, a new liability in respect to transactions or considerations already past." Idaho Const. art. XI § 12.

Idaho case law interpreting the Retroactivity Clause is virtually nonexistent. While the parties before the Court have all provided Ninth Circuit and Idaho case law regarding retroactive application of laws *in general* to support their arguments on this point, none point to any Idaho decisions specifically interpreting the Retroactivity Clause of the Idaho Constitution. Nevertheless, the Idaho State Legislature and Idaho Supreme Court, as well as general rules of judicial interpretation, have provided adequate guidance on determining whether a statute is to be applied retroactively. *See, e.g.* Idaho Code § 73-101 ("No part of these compiled laws is retroactive, unless expressly so declared."); *State v. Leary*, 372 P.3d 404, 408–09 (Idaho 2016) ("[I]n Idaho, a statute is not applied retroactively unless there is a clear legislative intent to that effect . . . ."). Accordingly, while it is unclear whether the Retroactivity Clause itself applies in this case, the Court

proceeds with its analysis under these general principles.

As under federal law, legislation is interpreted to act prospectively under Idaho law. *Ben Lomond, Inc. v. City of Idaho Falls*, 448 P.2d 209, 215 (Idaho 1968). "Retroactive legislation is not favored." *Winans v. Swisher*, 195 P.2d 357, 359 (Idaho 1948). Because of this, it is a "a well-settled and fundamental rule of statutory construction" that statutes should be construed to have a prospective rather than retroactive effect. *Id.* The Idaho Legislature has formalized this rule by statute, setting forth in Idaho Code § 73-101 that "[n]o part of [the Idaho Code] is retroactive, unless expressly so declared." Accordingly, in Idaho "statutory amendments are not deemed to be retroactive unless there is an express legislative intent to the contrary." *Leary*, 372 P.3d at 408. This presumption against retroactivity is also a fundamental rule of judicial interpretation generally. *See Afanador v. Garland*, 11 F.4th 985, 990 (9th Cir. 2021) (explaining it is a "background principle[]" that "legislation does not apply retroactively absent a clear indication" that the enacting legislative body intended to make the statute retroactive). "[L]egislation is deemed retroactive (and therefore impermissible unless expressly sanctioned by [the lawmaker])" when it (1) "changes the legal consequences of acts completed before its effective date," (2) "takes away or impairs vested rights acquired under existing laws," or (3) "creates a new obligation, imposes a new duty, or attaches a new disability." *Id.*

    a. § 42-224

As the Court has described, IDWR has already initiated forfeiture proceedings under § 42-224, thus applying that statute retroactively to rights that were already vested

in the United States prior to the enactment of the Idaho Statutes. But with that particular provision, retroactive application is immaterial; as the Court has discussed, the potential loss of rights under § 42-224 is virtually identical to the potential loss of rights under prior Idaho law. Because of this, retroactive application of § 42-224 does not "change the legal consequences of acts completed before its effective date," or otherwise impair any pre-existing legal rights. Thus, retroactive application of § 42-224 to stockwater rights declared under the Final Unified Decree does not violate the Retroactivity Clause of the Idaho Constitution.

    b.  <u>§ § 42-113(2)(b) and 42-504</u>

The United States argues that § 42-113(2)(b) applies retroactively by making existing stockwater rights held by the United States and its agencies appurtenant to permittees' base property, and transferable by the base property owner, even though no such limitation existed under the Final Unified Decree. By shifting control of rights acquired prior to the Statutes' existence to base property owners, the United States argues, § 42-113(2)(b) violates the Retroactivity Clause.

Similarly, the United States argues that § 42-504 violates the Retroactivity Clause by asserting that stockwater rights held by federal agencies or permittees "shall never be utilized for any purpose other than the watering of livestock on the federal grazing allotment that is the place of use for that stockwatering right." It argues that retroactively imposing this new modification limitation on rights that were previously perfected under the Final Unified Decree violates the Retroactivity Clause.

The Court agrees that such retroactive application of § § 42-113(2)(b) and 42-504

MEMORANDUM DECISION AND ORDER - 41

would likely violate the Retroactivity Clause. But the Court finds no evidence in the record that IDWR or any other entity has applied Idaho Code § 42-113(2)(b) to the United States or any other party as of yet. Here, neither statute contains any language indicating legislative intent that they should be applied retroactively. Accordingly, the Court construes them to have only prospective effect.

This interpretation alleviates many potential constitutional defects that might otherwise afflict the Idaho Statutes. To be clear, § § 42-113(2)(b) and 42-504 still violate the United States Constitution in other regards, as the Court has discussed above. But these laws are not facially invalid under the Retroactivity Clause of the Idaho Constitution, because they *can* be constitutionally applied to all stockwater rights acquired *after* the Idaho Statutes were enacted. Furthermore, unlike with § 42-224 (which indisputably has been applied the United States already through IDWR's issuance of the show-cause orders), the United States has not shown that the other Idaho Statutes have been applied to them thus far. Because of this, the United States likewise cannot prevail in as-applied challenges to § § 42-113(2)(b) and 42-224 under the Retroactivity Clause of the Idaho Constitution. Accordingly, the Court DENIES the United States' Motion for Summary Judgment with respect to its Retroactivity Clause challenges to all of the Idaho Statutes.

## C. Idaho Legislature Motion for Summary Judgment

In addition to supporting the State Defendants' arguments (*see* Dkt. 53-1, at 13 n. 5) and opposing the United States' constitutional challenges in similar fashion, the Legislature raises one unique argument in its Cross-Motion for Summary Judgment that

needs to be addressed. It argues that although the United States frames its Supremacy Clause arguments under the intergovernmental immunity Doctrine, the argument is actually one of obstacle preemption. This, the Legislature argues, matters because it shifts the Court's presumptions in reviewing the case: while under the intergovernmental immunity doctrine courts assume Congress *did not* intend to allow enforcement of discriminatory state laws, reviewing courts assume a valid exercise of state police power (and not preemption) where obstacle preemption is alleged.

Obstacle preemption considers whether a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Geo Grp.*, 50 F.4th at 762 (cleaned up). While "intergovernmental immunity attaches only to state laws that discriminate against the federal government," obstacle preemption "attaches to any state law, regardless of whether it specifically targets the federal government, but only if it imposes an obstructive, not-insignificant burden on federal activities." *United States v. California*, 921 F.3d 865, 880 (9th Cir. 2019).

The Court finds the Legislature's attempt to frame the United States' Supremacy Clause challenge as an obstacle preemption argument unconvincing. As the Court has explained, several of the Idaho Statutes at issue clearly discriminate against the United States. Regardless, the fact of the matter is that the United States has not alleged an obstacle preemption claim; it has asserted an intergovernmental immunity claim. The Court is satisfied that it has adequately weighed the intergovernmental immunity claim actually before it and finds no need to assess the Legislature's misplaced obstacle preemption argument.

### D. Ranchers' Motion for Summary Judgment

The arguments set forth by the Ranchers in their Motion for Summary Judgment are substantially similar to the arguments already addressed by the State Defendants and the Legislature. Namely, the Ranchers argue that: (1) the Court does not have jurisdiction because the claims are barred by res judicata; (2) the Idaho Statutes present no issues with the Supremacy, Property, or Contracts clauses of the United States Constitution or the Retroactivity Clause of the Idaho Constitution; and (3) a permanent injunction is not warranted in this case. The Court has already addressed the first two arguments at length in this decision, and finds no need to spill more ink on those points. The Court turns, then, to the issue of whether to grant permanent injunctive relief.

### E. United States Request for Permanent Injunctive Relief

Having determined the constitutional questions before it, the Court now turns to the United States' argument that it is entitled to permanent injunctive relief from the Idaho Statutes.

### 1. Legal Standard

District courts have authority to order a permanent injunction by way of their equitable powers and pursuant to Federal Rule of Civil Procedure 65(d). *See eBay Inc. v. MercExch., LLC*, 547 U.S. 388, 391 (2006). Additionally, under 28 U.S.C. § 2202, "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted . . . against any adverse party whose rights have been determined by such judgment." Injunctions are among the available remedies a court can grant based on a declaratory judgment. *Powell v. McCormack*, 395 U.S. 486, 499 (1969) ("A declaratory

MEMORANDUM DECISION AND ORDER - 44

judgment can then be used as a predicate to further relief, including an injunction"). Thus, it is well within the Court's power to issue an injunction in this case.

Injunctive relief "is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). While "the purpose of a preliminary injunction is to preserve the status quo pending a resolution on the merits," *McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012), a permanent injunction serves a distinct function: "[a] permanent injunction is a determination on the merits that a plaintiff has prevailed on a cause of action . . . against a defendant and that equitable relief is appropriate." *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 2013 WL 890126, at *3 (N.D. Cal. 2013) (cleaned up). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court . . . ." *eBay Inc.*, 547 U.S. at 391.

To be entitled to a permanent injunction, a plaintiff must demonstrate five factors: (1) actual success on the merits; (2) that it has suffered an irreparable injury; (3) that remedies available at law are inadequate to compensate for that injury; (4) that the balance of hardships warrants a remedy in equity; and (4) that the public interest would not be disserved by a permanent injunction. *Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Relations*, 730 F.3d 1024, 1032 (9th Cir. 2013); *see also Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n. 12, (1987) (noting that the standards for preliminary injunctions and permanent injunctions are "essentially the same" except that a plaintiff must show actual success for a permanent injunction rather

than a likelihood of success on the merits for a preliminary injunction).

With these principles in mind, the Court turns to the propriety of a permanent injunction in this case.

*2. Analysis*

For the reasons set forth below, the Court finds the United States has adequately demonstrated the elements required to merit a permanent injunction in this case with respect to Idaho Code § § 42-113(2)(b), 42-502, and 42-504. The Court also finds that the United States is not entitled to injunctive relief with respect to Idaho Code § § 42-222 and 42-224.

a. Actual Success on the Merits

The Court has found that § § 42-113(2)(b), 42-502, and 42-504 violate the Supremacy Clause of the United States Constitution and awarded declaratory judgment to the United States on those claims. Thus, the United States has achieved actual success on the merits with respect to Idaho Code § § 42-113(2)(b), 42-502 and 42-504. Because the United States did not achieve actual success on the merits in its challenges to § § 42-222(2) and 42-224, permanent injunctive relief is flatly unavailable for those statutes. Accordingly, the Court DENIES the United States' request for permanent injunctive relief with respect to § § 42-222(2) and 42-224, and proceeds with its analysis only for § § 42-113(2)(b), 42-502 and 42-504.

b. Inadequate Remedies at Law

The United States has shown that other remedies available at law are inadequate to address their injuries here. The Ninth Circuit has consistently held that "unlike monetary

injuries, constitutional violations cannot be adequately remedied through damages." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) (cleaned up).

### c.  Irreparable Injury

As the Ninth Circuit recently reiterated, "the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Baird v. Bonta*, 81 F.4th 1036 (9th 2023) (cleaned up). "Accordingly, when an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Id.* (cleaned up).

As stated above, the Court has already awarded summary judgment in the United States' favor with respect to § § 42-113(2)(b), 42-502, and 42-504 on the basis of their unconstitutionality. The United States has demonstrated it has suffered a constitutional injury with respect to each of these three statutes, which is itself sufficient to independently satisfy the irreparable injury requirement. Furthermore, the United States has shown that it will continue to suffer irreparable harm in the absence of an injunction. Enforcement of these statutes would impermissibly single out the United States and its agencies for disfavored treatment and result in significant adverse impacts to the federal grazing program as well as the availability and use of water on federal public lands. In light of these harms, the Court finds that the United States has demonstrated irreparable injury with respect to § § 42-113(2)(b), 42-502, and 42-504.

### c) Balance of Hardships

In considering whether to grant injunctive relief, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or

withholding of the requested relief." *Winter*, 555 U.S. at 24 (cleaned up). "To determine which way the balance of the hardships tips, a court must identify the possible harm caused by the [] injunction against the possibility of the harm caused by not issuing it." *Univ. of Hawaii Prof'l Assembly v. Cayetano*, 183 F.3d 1096, 1108 (9th Cir. 1999). In doing so, "courts of equity should pay particular regard for the public consequences" of issuing an injunction. *Wienberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

As the United States correctly points out, issuing a permanent injunction here inflicts no injury to the Defendants; it merely preserves the status quo under *Joyce* and Idaho law for decades prior to the enactment of the Idaho Statutes. On the other hand, allowing enforcement of the unconstitutional statutes will inflict substantial harm upon the United States and its agencies. Placing retroactive appurtenancy, type and place of use, and livestock ownership conditions on only federally-owned water rights inflicts constitutional injury upon the United States and its agencies.

d) Public Interest

The United States has also shown that public policy supports the issuance of a permanent injunction here. Idaho law has historically supported federal ownership of stockwater rights to support its public grazing programs, which benefit the ranching community and general public alike. Furthermore, the United States seeks to fulfill Congressional directives by securing vested water rights to benefit the owners of livestock that graze on federal lands, thus allowing federal agencies to effectively manage and administer those lands in the public interest.

"Because public interest concerns are implicated when a constitutional right has

been violated, all citizens have a stake in upholding the Constitution," *Baird*, 81 F.4th at 1042(cleaned up). Therefore, "it is always in the public interest to prevent the violation of a party's constitutional rights," *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707,731 (9th Cir. 2022) (quoting *Melendres*, 695 F.3d at 1002); *see also Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 482 (9th Cir. 2022), cert. denied, 143 S. Ct. 1749 (2023) ("[T]his court has consistently recognized the significant public interest in upholding [constitutional] principles.") (cleaned up).

Having demonstrated actual success on the merits, irreparable harm in the absence of an injunction, and that both the balance of the equities and the public interest weigh in its favor, the United States has met its burden. Accordingly, the Court GRANTS the permanent injunction with respect to Idaho Code §§ 42-113(b), 42-502, and 42-504 and enjoins these statutes from enforcement.[15]

### V. CONCLUSION

The United States has shown that Idaho Code § § 42-113(2)(b), 42-502, and 42-504 violate the Supremacy Clause of the United States Constitution. Accordingly, the Court will GRANT the United States' Motion for Summary Judgment on that claim with respect to those statutes. However, it has not shown that § § 42-222(2) and 42-224 violate the Supremacy Clause, and the Court will DENY its Motion with respect to those statutes.

---

[15] The Court is mindful of the Supreme Court's recent decision in *Labrador v. Poe*, 144 S. Ct. 921 (2024), questioning the propriety of universal injunctions. Here however, the statutes at issue specifically target the United States and its agencies, and categorical injunction against their enforcement does not materially impact anyone not a party to this case.

Additionally, the United States has not shown that any of the Idaho Statutes violate the Property or Contracts Clauses of the United States Constitution, the doctrine of Sovereign Immunity, or the Retroactivity Clause of the Idaho Constitution. Accordingly, the Court will DENY the United States' Motion and GRANT all Defendants' Motions for Summary Judgment with respect to those claims.

## VI. ORDER

1. The United States' Motion for Summary Judgment (Dkt. 34) is GRANTED with respect to Count VIII of the Amended Complaint as it pertains to Idaho Code § § 42-113(2)(b), 42-502, and 42-504.

2. The United States' Motion for Summary Judgment is DENIED with respect to all of the Idaho Statutes for Counts VII, IX, X, and XI of the Amended Complaint. The Motion is also DENIED with respect to Idaho Code § § 42-222(2) and 42-224 for Count VIII.

3. The State Defendants' Motion for Summary Judgment (Dkt. 43) is GRANTED with respect to Idaho Code § 42-222(2).

4. The Legislature's Motion for Summary Judgment (Dkt. 53) is GRANTED in part and DENIED in part in the same manner as the State Defendants.

5. The Ranchers' Motion for Summary Judgment (Dkt. 56) is GRANTED in part and DENIED in part in the same manner as the State Defendants.

6. The Legislature's Motion for Leave to File a Response (Dkt. 75) is DISMISSED as MOOT.

7. Pursuant to Federal Rule of Civil Procedure 58, the Court will enter a separate

judgment in accordance with this decision.

DATED: August 28, 2024



David C. Nye
Chief U.S. District Court Judge